UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECUNDA GUMBS<br><br>Petitioner,<br><br>-against-<br><br>TINA M. STANFORD, CHAIRPERSON, NEW YORK STATE BOARD OF PAROLE<br><br>Respondent. | Case No. 22-cv-_____<br><br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254** |

This petition is in the form dictated by the model form for use in petitions for habeas corpus pursuant to 28 U.S.C. § 2254 in the Southern District of New York. Please see the attached Memorandum of Law in Support of the Petition for a detailed explanation of Mr. Gumbs' claim.

Paragraphs 1 to 8 present the history of the state court proceedings; paragraph 9 lists the exhibits; paragraphs 10 to 35 present the federal constitutional claim; paragraphs 36 to 40 contain required technical information.

## **PROCEDURAL HISTORY**

1. Mr. Gumbs was convicted in the Supreme Court of the State of New York, Bronx County Criminal Term, under Indictment No. 1334/15.

2. Mr. Gumbs pleaded not guilty, and the case was tried before a jury.

3. Judgment of conviction on two counts of criminal possession of a weapon was entered and sentencing occurred on June 15, 2017.

4. Mr. Gumbs was sentenced to five years' imprisonment and five years' post-release supervision on each count, to run concurrently. Mr. Gumbs is currently under post-release

supervision by the respondent, Tina M. Stanford, who is Chairperson of the New York State Parole Board.

5. Mr. Gumbs was convicted of two counts of criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(3).

6. Mr. Gumbs appealed his conviction to the Supreme Court of New York, Appellate Division, First Department. Mr. Gumbs raised five grounds in his direct appeal: (1) the unconstitutional and erroneous use of a confession obtained in violation of *Miranda v. Arizona*; (2) the unduly prejudicial and erroneous introduction of irrelevant evidence of drug-related activity; (3) the unduly prejudicial questioning by the prosecution regarding a prior personal relationship; (4) the trial court's error in denying a missing witness charge; and (5) the constitutionally ineffective assistance of counsel who failed to read a proffer agreement concluded with the district attorney and who failed to object to closing arguments which enflamed the jury and misstated evidence. Mr. Gumbs' conviction was affirmed on June 23, 2021. *People v. Gumbs*, 195 A.D.3d 450 (1st Dep't 2021).

7. Mr. Gumbs sought leave to appeal his conviction to the New York Court of Appeals, which was denied on August 24, 2021. Mr. Gumbs raised three grounds in his leave application: (1) the unconstitutional and erroneous use of a confession obtained in violation of *Miranda v. Arizona*; (2) the erroneous introduction of irrelevant evidence of drug-related activity in violation of the collateral evidence bar; and (3) the erroneous introduction of past drug-related activity in violation of a defendant's *Sandoval* protections. Mr. Gumbs moved for reconsideration, which was denied on October 25, 2021, with leave to renew following the Supreme Court's decision in *Hemphill v.*

*New York*. After *Hemphill* was decided, Mr. Gumbs moved again for reconsideration, which following a telephone conference with the court was denied on May 6, 2022.

8. Mr. Gumbs has filed no other proceedings in state or federal court challenging his judgment of conviction and sentence.

## CITATIONS TO MR. GUMBS' EXHIBITS

9. Undersigned counsel is filing, contemporaneously with filing this Petition for a Writ of Habeas Corpus, transcripts and exhibits containing relevant documents from the record in the State trial and appellate courts.

- EXHIBIT A: The Decision and Order determining Mr. Gumbs' Direct Appeal (the "State Court Decision")
- EXHIBIT B: Submissions to the New York Appellate Division, First Department
- EXHIBIT C: Submissions to and Decisions by the New York Court of Appeals
- EXHIBIT D: May 1, 2017 Decision and Order on Defendant's Motion to Suppress, *People v. Gumbs*
- EXHIBIT E: Trial Transcript, *People v. Gumbs*
- EXHIBIT F: Trial Exhibits, *People v. Gumbs*
- EXHIBIT G: Voir Dire Transcript, *People v. Gumbs*
- EXHIBIT H: Pre-Trial Transcript, *People v. Gumbs*

## GROUNDS OF UNCONSTITUTIONALITY OF MR. GUMBS' CONVICTION AND SENTENCE

10. Mr. Gumbs raises one ground in this Petition under 28 U.S.C. § 2254. This is explained in more detail in the attached Memorandum of Law in Support of Mr. Gumbs' Petition. On the constitutional issue raised in this petition, the state court "adjudication of the claim… resulted in a decision that was contrary to, [and] involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**FACTUAL BACKGROUND**

11.     Mr. Gumbs was arrested in April 2015 following the police's pre-dawn raid of his apartment pursuant to a no-knock warrant. Exhibit E, at 132-141.

12.     During the raid, police found two firearms in a bedroom closet and marijuana in the kitchen. T-04/04/15 at 4-7. Mr. Gumbs and two other individuals were staying in the apartment then and were present during the raid. Exhibit E, at 282.

13.     Police immediately arrested Mr. Gumbs and brought him to the station. But nobody else staying at the apartment that morning—Mr. Gumbs' friend Mr. Turner and Mr. Gumbs' then-girlfriend Ms. Callahan—was arrested or charged with possessing any of the contraband. Exhibit E, at 107-08. Nobody else was fingerprinted, nor was their DNA taken. Exhibit E, at 105-07. And the prosecution would later fail to obtain an indictment against Mr. Gumbs on any drug-related charges.

14.     During the raid, police had forced Mr. Gumbs face-down on the floor and handcuffed him behind his back. Without giving Mr. Gumbs *Miranda* warnings, one of the officers asked if there was anything in the apartment. According to police (but which Mr. Gumbs denied, see Exhibit E, at 252), Mr. Gumbs responded to the effect of "the guns were in the bedroom closet and everything else was in the kitchen" (the "**Un-Mirandized Confession**"). Exhibit E, at 163.

15.     Prior to trial, the court correctly excluded this alleged statement by Mr. Gumbs for being obtained in violation of his *Miranda* rights. Exhibit D, Suppression Decision at pp. 4-5. At no point since that decision has the prosecution disputed the correctness of that initial ruling.

16. At trial, the prosecution's case against Mr. Gumbs therefore began on remarkably thin grounds: it offered the testimony of two officers about their search of the apartment and the fact that men's clothes were also found in the bedroom closet alongside the weapons, and one firearms expert who testified the weapons were operable.

17. No witness observed Mr. Gumbs physically possessing or otherwise using the firearms, the state failed to obtain any DNA or other forensic evidence which connected Mr. Gumbs to the firearms. The prosecution's own evidence established that two other people, two of many people with keys to the apartment (Exhibit E, at 245), were staying there at the time of Mr. Gumbs' arrest but neither were arrested or called by the state as a witness. Exhibit E, at 23-29.

18. During the prosecution's case in chief, one of the officers testified about the search of the apartment. Exhibit E, at 1-97. He walked the jury through the layout of the apartment and explained that two people other than Mr. Gumbs were inside: a man named Koden Turner who was staying on the couch and Vanessa Callahan who was in the bedroom. Exhibit E, at 23-29. He recounted finding "a large amount of money" in various locations as well as the two firearms and ammunition in the bedroom closet. Exhibit E, at 36-37. Finally, he identified men's clothing hanging in the same closet which he estimated would fit Mr. Gumbs. Exhibit E, at 45-46.

19. When cross-examining the officer, defense counsel asked who else was in the apartment besides Mr. Gumbs, whether they were searched, whether their DNA was collected, and whether they were arrested. Exhibit E, at 101-07. Defense counsel did not ask why any of these things were or were not done.

20. The prosecution twice moved to admit the previously excluded Un-Mirandized Confession in its case in chief on the theory that defense counsel had "opened the door," first by defense

counsel's voir dire and opening, Exhibit E, at 67, and then again soon after by his cross-examination of the officer. Exhibit E, at 109.

22. Defense counsel strenuously objected to the introduction of the Un-Mirandized Confession. Exhibit E, at 69 et seq.; Exhibit E, at 109 et seq. Defense counsel had already demonstrated that the statement was unconstitutionally obtained and therefore was constitutionally forbidden from use in the prosecution's case in chief, see Exhibit D, Suppression Decision at 4-5. In objecting again after the start of trial, defense counsel stated the well-settled constitutional rule: the only exception which authorizes the use of un-Mirandized statements is "perhaps if [the defendant] takes the stand, but not on a direct case," Exhibit E, at 69, which clearly had not occurred here.

22. The trial court disagreed. It relied on, among other cases, *People v. Reid*, in which the New York Court of Appeals held in the unrelated context of the Sixth Amendment that a defendant could open the door to statements which were otherwise inadmissible due to the Confrontation Clause.[1] Exhibit E, at 70. It relied on *Reid* to conclude that "[it] doesn't really matter what the evidence is if you open the door to it by trying to mislead the jury." Exhibit E, at 70.

23. The trial court therefore concluded that these questions "opened the door" to the admission of Mr. Gumbs' unconstitutionally obtained confession as part of the prosecution's case in chief in order to prevent jury "speculation" as to why police did not arrest the others Exhibit E, at 113. In doing so, the court simply assumed the truth of the officer's testimony.

---

[1] Notably, the U.S. Supreme Court has since expressly overruled *Reid* and confirmed that its prior precedents foreclose "opening the door" to evidence whose introduction would violate the Confrontation Clause. *See Hemphill v. New York*, 142 S.Ct. 681 (2022).

24. The prosecution then elicited, through the same officer and still during its case in chief, Mr. Gumbs' statement to police—a statement which amounted to a confession. Exhibit E, at 163.

25. As a direct result of the Un-Mirandized Confession's introduction, and despite his attorney's repeated promises that Mr. Gumbs would not testify, Mr. Gumbs was compelled to take the stand in his own defense. Over the course of the next two days, the prosecution would turn the proceedings into a referendum on seemingly every prior bad act Mr. Gumbs ever committed.

26. The jury returned a verdict of guilty on both counts of Criminal Possession of a Weapon in the Second Degree. On June 15, 2017, the court sentenced Mr. Gumbs to five years' imprisonment followed by five years' post-release supervision on each count, to run concurrently.

## GROUNDS FOR RELIEF

27. The prosecution violated Mr. Gumbs' Fifth Amendment privilege against self-incrimination and the rule in *Miranda v. Arizona* by introducing Mr. Gumbs' Un-Mirandized Confession in its case in chief. *Miranda v. Arizona*, 384 U.S. 436 (1966).

28. Under *Miranda* and the cases which followed, including *Harris v. New York* and *James v. Illinois*, a defendant's statements obtained in violation of *Miranda* are inadmissible in the prosecution's case in chief. Since the Court's 1966 decision in *Miranda*, this has remained the bright-line, constitutional rule—the so-called "exclusionary rule."

29. The Court recognizes only a single circumstance in which the prosecution may introduce such unconstitutionally-obtained statements: to address perjury by a testifying defendant. *Harris v. New York*, 401 U.S. 222 (1971). This is the oft-quoted exception that the "shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk

of confrontation with prior inconsistent utterances." *Harris,* 401 U.S. at 226. Put another way, the constitutionally suppressed statements may only be used to impeach defendants, not defenses.

30. The Court has considered and rejected any expansion of the perjury exception beyond the impeachment of a testifying defendant—whether that be to impeach other defense witnesses or as evidence in the prosecution's case in chief. In *James v. Illinois*, the Supreme Court affirmed its rule that statements obtained in violation of *Miranda* may only be used to impeach a testifying defendant:

> Our previous recognition of an impeachment exception limited to the testimony of defendants reflects a careful weighing of the competing values. Because expanding the exception to encompass the testimony of all defense witnesses would not further the truth-seeking value with equal force but would appreciably undermine the deterrent effect of the exclusionary rule, we adhere to the line drawn in our previous cases.

493 U.S. 307, 320 (1990).

31. In doing so, the Court remained clear that "evidence that has been illegally obtained . . . is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." *James*, 493 U.S. at 313 (quoting *United States v. Havens*, 446 U.S. 620, 626 (1980)).

32. This is precisely the argument put forward by defense counsel at Mr. Gumbs' trial (Exhibit E, at 69):

> THE COURT: Right. And I suppressed it because it
> was un-Mirandized. If it's voluntary, can't the People use
> it to correct a misleading Impression that the defendant may
> seek to give the jury?
> MR. GELLER: Perhaps if he takes the stand, but
> not on a direct case, your Honor.

33. But the trial court rejected this claim by applying an incorrect "opening the door" standard, imported from New York state law, in violation of clearly established Supreme Court precedent concerning Mr. Gumbs' Fifth Amendment rights. Exhibit E, at 70. This was contrary to and an unreasonable application of clearly established law.

34. Because clearly established Supreme Court precedent forbade the prosecution from using Mr. Gumbs' un-Mirandized statements in the manner that occurred here—as part of its case in chief as substantive evidence of guilt—the writ should issue.

35. All claims raised in this Petition have been presented to the highest state court having jurisdiction, here being the Supreme Court, Appellate Division, First Department.

## **REQUIRED INFORMATION**

36. Mr. Gumbs has not previously filed any type of petition, application, or motion in a federal court regarding this conviction.

37. Mr. Gumbs does not currently have any appeal now pending in any court.

38. Mr. Gumbs' counsel at his trial and sentencing was Alvin Geller, 175 Main St. STE 511, White Plains, New York 10601. Mr. Gumbs' counsel on appeal was Caprice R. Jenerson and David Bernstein, Office of the Appellate Defender, 11 Park Place, Suite 1601, New York, NY 10007.

39. Mr. Gumbs does not have any future sentence to serve after he completes the sentence for judgment of conviction he is challenging in this Petition.

40. As more fully explained in the attached Memorandum of Law, the Petition is timely because it is filed within one year of the Court of Appeals' denial of Mr. Gumbs' second motion

for reconsideration of denial of leave to appeal the Appellate Division's judgment affirming the conviction.

WHEREFORE, Secunda Gumbs prays that this court:

1. Grant a writ of habeas corpus vacating Mr. Gumbs' judgment of conviction, and order that Mr. Gumbs be released or retried;

2. Grant such other and further relief as may be just and proper.

Dated: New York, New York
June 3, 2022

Respectfully submitted,

Caprice R. Jenerson
Office of the Appellate Defender

By: *[signature]*

David Bernstein, Managing Attorney
State Bar No. 4457263
dbernstein@oadnyc.org

11 Park Place RM 1601
New York, New York 10007-2815
Tel: (212) 401-4141

*Attorneys for Petitioner Secunda Gumbs*

Darren Pouliot
State Bar No. 5660691
dpouliot@orrick.com

Orrick, Herrington & Sutcliffe LLP
51 W. 52nd Street
New York, New York 10019-6142
Tel: (212) 506-5000

*Of Counsel*

-11-

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner's legal team the events described in this Petition. On the basis of those discussions, on information and belief, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated June 3, 2022

By: *[signature]*

David Bernstein
Counsel for Petitioner