# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECUNDA GUMBS<br><br>          Petitioner,<br><br>     -against-<br><br>TINA M. STANFORD, CHAIRPERSON,<br>NEW YORK STATE BOARD OF PAROLE<br><br>         Respondent. | Case No. 22-cv-_____ |

## MEMORANDUM OF LAW IN SUPPORT OF THE PETITION FOR A WRIT OF

## HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

David Bernstein (4457263)
dbernstein@oadnyc.org
Caprice R. Jenerson, *Attorney-in-Charge*
Office of the Appellate Defender
11 Park Place Suite 1601
New York, New York 10007-2815
Tel: (212) 401-4141

*Attorneys for Petitioner*

Darren Pouliot (5660691)
dpouliot@orrick.com
51 W. 52nd Street
New York, New York 10019-6142
Tel: (212) 506-5000

*Of Counsel*

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 5

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 6

  A.   Police Raided Mr. Gumbs' Apartment Based on a Confidential Informant's Tip and
  Elicited a Confession from Mr. Gumbs Without Giving Required *Miranda* Warnings............. 7

  B.   The Prosecution's Admissible Evidence Against Mr. Gumbs Was Remarkably Thin After
  the Court Initially (and Properly) Excluded Mr. Gumbs' Un-Mirandized Confession. ............. 8

  C.   The Trial Court Allowed the Prosecution to Introduce Mr. Gumbs' Un-Mirandized
  Confession Through an Unconstitutional Back Door. ............................................. 10

  D.   On Direct Appeal, the Court Affirmed Mr. Gumbs' Conviction and Found the Un-
  Mirandized Confession Properly Admitted into Evidence. ...................................... 14

  E.   Mr. Gumbs Raised His Constitutional Claim at Every Available Level of the State
  Courts, Which Rejected the Claim's Merits. ..................................................... 15

III.   JURISDICTION AND VENUE ................................................................. 16

IV.    TIMELINESS ...................................................................................... 16

V.     SUMMARY OF CLAIM........................................................................ 16

VI.    EXHAUSTION .................................................................................... 17

VII.   LEGAL STANDARD............................................................................ 17

  A.   The Antiterrorism and Effective Death Penalty Act........................................ 17

  B.   Mr. Gumbs' Constitutional Claim Under *Miranda v. Arizona* and Its Progeny............... 18

VIII.  ARGUMENT ...................................................................................... 19

  The Trial Court's Decision Was Contrary To and an Unreasonable Application of *Miranda*
  and Its Progeny Because It Permitted the Use of Mr. Gumbs' Un-Mirandized Confession in
  the State's Case-in-Chief in Violation of Clearly Established Supreme Court Precedent. ...... 19

IX.    CONCLUSION...................................................................................... 36

### TABLE OF AUTHORITIES

**Cases**

*Arizona v. Fulminante*, 499 U.S. 279 (1991) ........................................................ 33, 34

*Brecht v. Abrahamson*, 407 U.S. 619 (1993) ............................................................ 18

*Brown v. Davenport*, 142 S.Ct. 1510 (2022) ........................................................... 18

*Bruton v. U.S.*, 391 U.S. 123 (1968) ....................................................................... 29

*Carafas v. LaVallee*, 391 U.S. 234 (1968) ............................................................... 16

*Crane v. Kentucky,* 476 U.S. 683 (1986) ................................................................. 25

*Elkins v. United States*, 364 U.S. 206 (1960) ............................................................ 6

*Esposito v. Warden*, 818 Fed.Appx. 962 (11th Cir. 2020) ....................................... 27

*Evitts v. Lucey*, 469 U.S. 387 (1985) ....................................................................... 16

*Garlick v. Lee*, 1 F.4th 122 (2d Cir. 2021) ................................................... 18, 30, 31

*Harris v. New York*, 401 U.S. 222 (1971) ........................... 6, 22, 23, 24, 25, 27, 30

*Hemphill v. New York*, 142 S.Ct. 681 (2022) ........................................................... 29

*Hendrickson v. Norris*, 224 F.3d 748 (8th Cir. 2000) .............................................. 27

*Illinois v. Perkins*, 496 U.S. 292 (1990) ................................................................. 19

*James v. Illinois*, 493 U.S. 307 (1990) ............... 6, 19, 24, 25, 26, 27, 28, 30, 31, 32, 36

*Jones v. Cunningham*, 371 U.S. 236 (1963) ............................................................ 16

*Jones v. Stinson*, 229 F.3d 112  (2d Cir. 2000) ....................................................... 17

*Jones v. Vacco*, 126 F.3d 408 (2d Cir. 1997) .......................................................... 17

*Kansas v. Ventris*, 556 U.S. 586 (2009) .................................................................. 23

*Lewis v. Comm'r of Correction*, 957 F.Supp.2d 169 (D. Conn. 2013) ..................... 18

*Maleng v. Cook*, 490 U.S. 488 (1989) ..................................................................... 16

*Mapp v. Ohio*, 367 U.S. 643 (1961) ........................................................................ 22

*Mask v. McGinnis*, 233 F.3d 132 (2d Cir. 2000) ..................................................... 28

*Miranda v. Arizona*, 384 U.S. 436 (1966) ................................... 5, 18, 19, 20, 21

*Michigan v. Harvey*, 494 U.S. 344 (1990) ......................................................... 23, 27

*Panetti v. Quarterman*, 551 U.S. 930 (2007) .......................................................... 18

*People v. Gumbs*, 195 A.D.3d 450 (1st Dep't 2021) ........................ 14, 15, 17, 29, 30

*People v. O'Garra*, 16 A.D.3d 251 (1st Dep't 2005) ............................................... 29

*People v. Reid*, 19 N.Y.3d 382 (2012) .................................................................... 29

*People v. Schlesinger Elec. Contractors, Inc.*, 143 A.D.3d 516 (1st Dep't 2016) ..... 28

*People v. Smith*, 270 A.D.2d 132 (1st Dep't 2000) .................................................. 29

*Perez v. Greiner*, 296 F.3d 123 (2d Cir. 2002) ....................................................... 16

*Pollard v. United States*, 352 U.S. 354 (1957) ....................................................... 16

*Rhode Island v. Innis*, 446 U.S. 291 (1980) ............................................................ 20

*Scanio v. United States*, 37 F.3d 858 (2d Cir. 1994) .............................................. 16

*Sibron v. New York*, 392 U.S. 40 (1968) ................................................................. 16

*U.S. ex rel. Hill v. Pinto*, 394 F.2d 470 (3d Cir. 1968) ..................................... 26, 35

*U.S. v. Chaparro*, 956 F.3d 462 (7th Cir. 2020) ..................................................... 27

*U.S. v. Havens*, 446 U.S. 620 (1980) ................................................................. 23, 24

*U.S. v. Hinckley*, 672 F.2d 115 (D.C. Cir. 1982) .................................................... 22

*U.S. v. Jackson*, 415 F.3d 88 (D.C. Cir. 2000) ....................................................... 27

*U.S. v. Molina*, 368 F.Supp.2d 308 (S.D.N.Y. 2005) ........................................ 19, 20

*U.S. v. Morgan*, 346 U.S. 502 (1954) ..................................................................... 16

*U.S. v. Morla-Trinidad*, 100 F.3d 1 (1st Cir. 1996) ................................................ 24

*U.S. v. Newton*, 369 F.3d 659 (2d Cir. 2004)...................................................................... 20

*U.S. v. Rodriguez*, 356 F.3d 254 (2d Cir. 2004) ................................................................ 19

*U.S. v. Sanders*, 743 F.3d 471 (7th Cir. 2014)............................................................ 27, 30

*U.S. v. Stuckey*, 317 Fed.Appx. 48 (2d Cir. 2009) ........................................................... 27

*U.S. v. Taylor*, 745 F.3d 15 (2d Cir. 2014) ...................................................................... 33

*U.S. v. Williams*, 181 F.Supp.2d 267 (S.D.N.Y. 2001)................................................ 23, 28

*Walder v. United States*, 347 U.S. 62 (1954) .................................................................... 22

*Weeks v. United States*, 232 U.S. 383 (1914) ................................................................... 22

*Williams v. Poulos*, 11 F.3d 271 (1st Cir. 1993)........................................................... 22, 27

*Wilson v. Sellers*, 485 U.S. ___, 138 S.Ct. 1188 (2018) ..................................................... 17

*Woods v. Etherton*, 578 U.S. 113 (2016) .......................................................................... 18

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991)........................................................................ 17

*Zappulla v. New York*, 391 F.3d 462 (2d Cir. 2004) ......................................................... 33

## **Statutes**

U.S. Const. amend. VI ...................................................................................................... 25

U.S. Const. amend. XIV .................................................................................................... 25

28 U.S.C. § 2241 .............................................................................................................. 16

28 U.S.C. § 2244 .............................................................................................................. 16

28 U.S.C. § 2254 ................................................................................................... 16, 17, 18

## I.    INTRODUCTION

Petitioner Secunda Gumbs seeks a writ of habeas corpus because he was convicted following the prosecution's impermissible and prejudicial use of his un-Mirandized confession against him at trial in violation of his Fifth Amendment rights. Mr. Gumbs presented his claim to the appropriate state courts, which rejected it on the merits. In doing so, the last state court's decision was contrary to and unreasonably applied clearly established Supreme Court law. For these reasons, and because Mr. Gumbs has shown entitlement to relief on the merits of his claims, the writ should issue and Mr. Gumbs' unconstitutional conviction should be reversed.

Mr. Gumbs was charged with two counts of unlawful criminal possession of a weapon in the second and third degrees, convicted on two second-degree counts of criminal possession of a weapon, and sentenced to five years' imprisonment with five years' post-release supervision on each count, to run concurrently. Without the confession, the prosecution's case rested on no direct evidence- merely weak circumstantial evidence- to show that Mr. Gumbs knew there were weapons in his co-habited apartment.

The trial court initially and correctly suppressed Mr. Gumbs' confession under *Miranda v. Arizona*, 384 U.S. 436 (1966), and the propriety of that ruling has not been meaningfully challenged by the State. But during trial, the prosecution successfully introduced the un-Mirandized confession in its case in chief by persuading the trial court that New York's expansive "opening the door" doctrine allowed it to do so where counsel's questioning of the prosecution's witness could lead to juror speculation.

The trial court agreed, but in doing so, failed to recognize that decades of U.S. Supreme Court precedent foreclosed extending New York's "opening the door" doctrine this far. There is a single exception to the exclusionary rule announced in *Miranda v. Arizona* which permits the use

of un-Mirandized statements only to impeach a testifying defendant, to protect the integrity of proceedings against perjury. *See Harris v. New York*, 401 U.S. 222, 225 (1971). Yet even the *Harris* court recognized that such statements remain "unavailable to the prosecution in its case in chief." *Id.*

The U.S. Supreme Court eliminated any doubt that other prosecutorial exceptions might be made when it decided *James v. Illinois*. 493 U.S. 307 (1990). There, the Court rejected the State's request to expand the exclusionary exception to allow prosecutors to impeach defense *witnesses* with the defendant's unconstitutionally-obtained statement. *Id.* at 320. The Court held that "[e]xpanding the class of impeachable witnesses from the defendant alone… would create different incentives affecting the behavior of both defendants and law enforcement" and "would significantly undermine the rule's ability 'to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.'" *Id.* at 313, 319 (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)). Indeed, the Court confirmed that merely excluding the evidence from the prosecution's case in chief was not an adequate safeguard to protect the constitutional right. *Id.* at 318-19.

In short, the clearly established rule is that un-Mirandized statements may only be introduced to impeach defendants, not defenses. The trial court abandoned this rule and allowed the prosecution to introduce an un-Mirandized confession as substantive evidence of guilt following defense questioning of the prosecution's witness and without Mr. Gumbs have taken the stand. For this reason, the writ should issue.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gumbs was arrested on April 10, 2015, following the execution of a search warrant issued for his apartment which uncovered two firearms located in a bedroom closet. Exhibit E, at

124-25. He was charged with two counts of criminal possession of a weapon in the second and third degrees. Exhibit E, at 497-504.

**A.**      **Police Raided Mr. Gumbs' Apartment Based on a Confidential Informant's Tip and Elicited a Confession from Mr. Gumbs Without Giving Required *Miranda* Warnings.**

In April 2015, the police secured a no-knock warrant to search Mr. Gumbs' apartment for weapons and drugs after a confidential informant testified in closed proceedings that, while in that apartment, they saw two firearms in a bedroom closet and marijuana in the kitchen. Exhibit H, at 3.

Less than a week later, police officers and an entry team carried out a pre-dawn raid of Mr. Gumbs' apartment to execute that warrant. Exhibit E, at 132-141.  At least four members of the entry team, equipped with a battering ram and rifles, crashed into Mr. Gumbs' apartment yelling "police, search warrant!" Exhibit E, at 14-17. The other officers then entered to find Mr. Gumbs face down on the floor and handcuffed behind his back. Exhibit E, at 104. Without giving Mr. Gumbs any *Miranda* warnings, one of the officers asked if there was anything in the apartment. According to police, Mr. Gumbs responded to the effect of "the guns were in the bedroom closet and everything else was in the kitchen," Exhibit E, at 163 ("Un-Mirandized Confession"). In the closet, officers found two black bags each containing ammunition and a firearm: one contained a Smith & Wesson revolver and the other contained a 9-millimeter rifle. Exhibit E, at 36-39. In the kitchen, officers found a "large quantity of marijuana," scales, and packaging material (around 900 plastic bags). Exhibit E, at 341-42. They also recovered over $6400 in cash from locations throughout the apartment. Exhibit E, at 47.

Police immediately arrested Mr. Gumbs and brought him to the station. But two other people had been staying in the apartment and were present at the time of arrest. Exhibit E, at 282.

One was a friend of Mr. Gumbs and the other was Mr. Gumbs' then-girlfriend Vanessa Callahan. Exhibit E, at 245. They (along with others not present) had their own keys. Exhibit E, at 245. Yet nobody else was arrested or charged with possessing any of the contraband. Exhibit E, at 107-08. Nobody else was fingerprinted, nor was their DNA taken. Exhibit E, at 105-07.

A grand jury indicted Mr. Gumbs for criminal weapons possession but did not indict him for any drug-related offenses. Exhibit E, at 61.

**B.     The Prosecution's Admissible Evidence Against Mr. Gumbs Was Remarkably Thin After the Court Initially (and Properly) Excluded Mr. Gumbs' Un-Mirandized Confession.**

At first, it appeared Mr. Gumbs might receive a trial which, consistent with a series of correct pretrial rulings, focused on the crimes charged: whether he knowingly possessed the two weapons. But aggressive prosecution tactics and a series of erroneous decisions over the course of trial enabled the prosecution to introduce a slew of prejudicial material. Nothing was more prejudicial than the prosecution's use of Mr. Gumbs' un-Mirandized confession.

### 1.     The trial court properly suppressed Mr. Gumbs' Un-Mirandized Confession and other irrelevant and prejudicial evidence.

Before trial, the court suppressed the Un-Mirandized Confession for being obtained in violation of Mr. Gumbs' *Miranda* rights. Exhibit D, Suppression Decision at 4-5. It found that Mr. Gumbs, handcuffed behind his back in the hallway of the apartment, was not free to leave and had not received any *Miranda* warnings before officers questioned him. *Id.* The prosecution did not seriously challenge this decision, Exhibit E, at 65, and has not suggested at any point afterward that the initial suppression decision was incorrect.

The court, recognizing the potential for unfair prejudice, also excluded reference to Mr. Gumbs' past convictions for the sale of drugs. Exhibit G, at 66-73. Likewise, the court found evidence of prior arrests for marijuana possession would be unduly prejudicial "[b]ecause the

prosecution chose not to charge the defendant with any marijuana-related drug crimes." Exhibit G, at 74.

The court determined that physical evidence recovered during the search warrant's execution—the scales, glassines, three pounds of marijuana, and the denominations of currency located throughout the apartment—"would be far too prejudicial to allow in evidence" when Mr. Gumbs was not being charged with drug-related crimes. Exhibit G, at 117.

Finally, the court held that if defense counsel opened the door through opening statements or cross-examination, the prosecution, under an earlier proffer agreement, could introduce Mr. Gumbs' proffer session statement claiming he owned the guns for self-defense. Exhibit G, at 843.

### 2. The prosecution's case lacked any direct evidence that Mr. Gumbs knew of the weapons' existence.

The sole contested issue the prosecution needed to prove was whether Mr. Gumbs *knowingly* possessed the two weapons found in the apartment closet. It could muster no direct evidence on this point.

Following the court's pretrial decisions excluding the unconstitutionally obtained and otherwise irrelevant or prejudicial evidence, the prosecution's case in chief consisted of the testimony of two officers, Detective Adams and Officer Assent, and firearms expert Detective Mottershead. No witness observed Mr. Gumbs physically possessing or otherwise expressing knowledge that the firearms were in the apartment, no witness testified to any DNA or other forensic evidence which could connect Mr. Gumbs to the weapons, and neither of the other individuals staying at the apartment would be called by the prosecution about what they might have witnessed.

Detective Adams was the state's primary witness. He testified about the execution of the search warrant. *See generally* Exhibit E, at 1-97. He walked the jury through the layout of the one-

bedroom apartment and explained that two people other than Mr. Gumbs were inside at the time of the raid: a man named Koden Turner in the living room, who had been staying with Mr. Gumbs, and Vanessa Callahan, who was in the bedroom and also spent significant time staying at the apartment. Exhibit E, at 23-29. Adams recounted finding "a large amount of money" in various locations throughout the bedroom. Exhibit E, at 30, 47. He recovered two firearms and ammunition from the bedroom closet: one in a shaving kit bag, the other in a black gym bag. Exhibit E, at 36-37. Finally, Adams identified men's clothing hanging in the same closet which he estimated would fit Mr. Gumbs. Exhibit E, at 45-46.

Officer Assent then testified to a statement by Mr. Gumbs made at the police station asking about the quantity of money recovered from the apartment. Exhibit E, at 125-26. Detective Mottershead testified that the firearms were operable, described the ammunition recovered, and recounted the weapons' chain of custody. Exhibit E, at 168-209.

This was the sum-total of the prosecution's case in chief on the disputed issue. Accordingly, the prosecution was asking that the jury should infer, beyond all reasonable doubt, that Mr. Gumbs knew weapons were in his co-habited apartment because he knew other things were in his apartment and men's clothes hung in the same closet where the guns were found.

## C.   The Trial Court Allowed the Prosecution to Introduce Mr. Gumbs' Un-Mirandized Confession Through an Unconstitutional Back Door.

Perhaps because of the nature of the case it mustered, the prosecution repeatedly pressed the court to introduce Mr. Gumbs' Un-Mirandized Confession on the basis that defense counsel had "opened the door" to its introduction, first after openings and again during the state's case in chief. The court agreed that counsel could and did open the door to the Un-Mirandized Confession in the latter circumstance, and in doing so, permitted the prosecution to introduce the statement

during its case in chief.

> **1.    The trial court found un-Mirandized statements are able to be introduced during the prosecution's case in chief.**

During voir dire, defense counsel explained to the jury the issues in the case and the nature of the defense: that the prosecution needed to prove that Mr. Gumbs *knowingly* possessed the weapons found in the apartment, and that one defense could be that Mr. Gumbs had no knowledge and the prosecution could not prove beyond a reasonable doubt that he did. Exhibit G, at 349-51. In his opening statement, defense counsel stated simply, "The issue is have the People proven beyond a reasonable doubt that Mr. Gumbs knowingly and unlawfully possessed those weapons." Exhibit E, at 12. Trial then began with the prosecution's first witness, Detective Adams.

Later, on the second day of trial and during the prosecution's case in chief, the court held a hearing in which it ruled on an unrelated opening-the-door issue. Exhibit E, at 61-64. At this point, the prosecution complained about defense counsel's statements about "lack of knowledge" in voir dire and opening and the court asked whether these could "open the door" to Mr. Gumbs' Un-Mirandized Confession. Exhibit E, at 64-65. The prosecution argued they do: "I would contend that that certainly would, and I would contend that door's already been opened." Exhibit E, at 65.

The court would ultimately disagree that the door had, to that point, been opened to the use of Mr. Gumbs' Un-Mirandized Confession, despite believing that even in voir dire "the cases make very clear that the defendant can open the door... to evidence that otherwise would not be admissible." Exhibit E, at 71; *see also id.* ("Now my view, you have not opened the door on your opening statement to the statement that Mr. Gumbs made... I said I pulled the curtain between voir dire and today...."). But the issue prompted the court to give an advance ruling on whether counsel would open the door to the Un-Mirandized Confession by further questioning:

> **THE COURT:** Right. And I suppressed it because it was un-Mirandized. If it's voluntary, can't the People use it to correct a

misleading impression that the defendant may seek to give the jury?

**MR. GELLER:** Perhaps if he takes the stand, but not on a direct case, your Honor.

**THE COURT**: But what if, but -- listen, okay. So let me give you some more cases. *People versus Massi*, 2 NY3d 179 from 2004; *People versus Reid*, 19 NY3d 382 from the year 2012; *People against Seavy*, 16 AD3rd 1130, Fourth Department 2005 -- sorry these are out of order; *People against Coley*, 129 AD3rd 1327, Third Department 2015; and *People against Everett*, 96 AD3d 1105, Third Department 2012, all on the issue of opening the door. Indeed, as the Court of Appeals held in *Reid*, the defendant, based on his defense, may open the door to statements that would not be admissible because they violate the *confrontation clause. Doesn't really matter what the evidence is* if you open the door to it by trying to mislead the jury.

Exhibit E, at 69-70 (emphasis added). In doing so, the court necessarily decided the truth of the officer's testimony and the falsity of the impression it understood the defense to have created despite neither being admitted by the defense. *See, e.g.*, Exhibit E, at 68 ("The defendant has not admitted anything. That's a question of fact whether the defendant made that statement."); Exhibit E, at 113 ("[The Court: H]e told them where the guns were. He obviously knew where they were. [Defense Counsel:] I don't know the answer to that question. That's an allegation that the People have made. I don't know that."). The guillotine of the statement's admission would not hang above the defense for long before descending.

### 2.    The trial court then found counsel opened the door to the prosecution's use of Mr. Gumbs' Un-Mirandized Confessions in its case in chief.

Detective Adams subsequently testified on direct examination that two other individuals were in the apartment at the time of the police entry, one being a man on the couch with a suitcase and the other a woman in the sole bedroom. Exhibit E, at 25-28. Defense counsel then began cross-examination by asking Detective Adams to confirm who else was in the apartment besides Mr. Gumbs, whether they were searched, whether their DNA was collected, and whether they were

arrested. Exhibit E, at 101-07. Defense counsel did not ask why any of these things were done or not done.

The trial court found these questions "opened the door" to the admission of Mr. Gumbs' unconstitutionally obtained confession to prevent jury "speculation" as to why police did not arrest the others. Exhibit E, at 113. Detective Adams then told the jury that Mr. Gumbs said, "[T]he firearms were in the bedroom closet." Exhibit E, at 163.

### 3. The trial devolved dramatically following the Un-Mirandized Confession's admission and Mr. Gumbs was quickly convicted.

Once the court permitted the prosecution to introduce what "amounts to a confession," Exhibit E, at 407, Mr. Gumbs was compelled to take the stand in his own defense.[1] Defense counsel first walked through Mr. Gumbs' background and employment history, and in summary asked, "So is it also as an adult that you *generally* supported yourself through legal means over the years?" Exhibit E, at 243 (emphasis added). The court held this "open[ed] the door" and invited the prosecution to ask about the "illegal means" through which Mr. Gumbs may have supported himself at the time. Exhibit E, at 266. From this generic background question flowed nearly all the other excluded material, even though much of it was extrinsic evidence.

The court also reversed its pretrial ruling and permitted the prosecution to introduce the titles of Mr. Gumbs' various marijuana sales convictions. The prosecution coupled all of this testimony with explanations about the "tons of cash in denominations consistent with selling illicit

---

[1] The record contains many representations by counsel before this point that Mr. Gumbs would not testify. *See, e.g.*, Exhibit G, at 708 ("During the course of this litigation, in all probability, I'm quite sure Mr. Gumbs will not testify."); Exhibit G, at 709 ("Mr. Gumbs has no obligation to testify, and I'll tell you now I don't think he will testify."); Exhibit G, at 785 ("I tell you now, Mr. Gumbs will not testify. It's his litigation, you will not hear him."); Exhibit G, at 809 ("I tell you now that in all probability Mr. Gumbs will not testify in this trial."); Exhibit E, at 10 (opening statement) ("I tell you in the present posture of this case Mr. Gumbs will not testify. It's not a hundred percent guaranteed, but it looks very much like he will not testify."). Further, when the rebuttal witness ADA Tara Diener recounted a confession Mr. Gumbs made during a proffer session to impeach his testimony, this too flowed from the trial court's error in admitting the Un-Mirandized Confession. *See* Exhibit E, at 360-61.

substances," Exhibit G, at 55, "close to $6400," which was found all over the apartment. *See* Exhibit E, at 7, 30, 33, 34, 43, 46, 47. Even more prejudicially, the prosecution successfully convinced the court that Mr. Gumbs opened the door to admission of a photograph depicting drugs, guns, drug paraphernalia, and cash seized from the apartment- the type of image frequently shared by law enforcement in publicizing a successful "drug bust." Exhibit F, "People's Exhibit 23."

Finally, the prosecution extinguished any hope Mr. Gumbs may have had following this evidence when the court again reversed itself and allowed them to call Assistant District Attorney Tara Diener to the stand as a rebuttal witness. ADA Diener testified that Mr. Gumbs, after his arrest and during a proffer session, admitted to possession of the firearms for self-defense. *See* Exhibit E, at 360-61. The court had ruled previously that this evidence could and would not come in unless Mr Gumbs were to take the stand- something he was forced to do following the introduction of his un-Mirandized confession.

The jury returned a verdict of guilty on both counts of Criminal Possession of a Weapon in the Second Degree. On June 15, 2017, the court sentenced Mr. Gumbs to five years' imprisonment followed by five years' post-release supervision on each count, to run concurrently.

## D.    On Direct Appeal, the Court Affirmed Mr. Gumbs' Conviction and Found the Un-Mirandized Confession Properly Admitted into Evidence.

On October 7, 2020, Mr. Gumbs timely appealed his conviction and sentence raising *among others* the unconstitutionality of his conviction based on the prosecution's use of his Un-Mirandized Confession to police.

The Appellate Division, First Department, affirmed Mr. Gumbs' conviction and sentence. 195 A.D.3d 450 (1st Dep't 2021). Before the Appellate Division, Mr. Gumbs presented full briefing on the constitutional error below and in particular why the Supreme Court's precedents

under *Miranda v. Arizona* and *James v. Illinois* foreclosed the use of his Un-Mirandized Confession in the prosecution's case in chief. Exhibit B, "Brief for Defendant-Appellant Secunda Gumbs" and "Reply Brief for Defendant-Appellant Secunda Gumbs."

The Appellate Division reviewed the issue and, citing among other decisions *People v. Reid*, found no error, ruling the trial "court providently exercised its discretion in finding that this testimony opened the door to defendant's suppressed statement to the police… as to the location of the two illegal weapons he was charged with possessing." *Gumbs*, 195 A.D.3d at 450.

**E.     Mr. Gumbs Raised His Constitutional Claim at Every Available Level of the State Courts, Which Rejected the Claim's Merits.**

The New York Court of Appeals then exercised its discretion in denying leave to further appeal the conviction. On June 23, 2021, Mr. Gumbs timely applied for permission to appeal the Appellate Division's order affirming his conviction. Exhibit C, "Application for Leave to Appeal." On August 24, 2021, the Court of Appeals denied permission to appeal. Exhibit C, "Order Denying Leave." On September 17, 2021, Mr. Gumbs applied for reconsideration under 22 NYCRR § 500.20(f) and in the alternative requested leave to renew his application following a decision being made by the U.S. Supreme Court in *Hemphill v. New York* on the scope of New York's door-opening rule. Exhibit C, "Request for Reconsideration." The Court of Appeals denied the request for reconsideration with leave to renew within 60 days after the decision in *Hemphill v New York*. Exhibit C, "Order Denying Reconsideration with Leave to Renew." The U.S. Supreme Court rendered its decision on January 20, 2022, and Mr. Gumbs renewed his request on March 18, 2022. Exhibit C, "Request for Reconsideration… Following the Decision in *Hemphill v. New York*." On May 6, 2022, following a telephone conference with Judge Jenny Rivera, the Court of Appeals denied Mr. Gumbs' renewed motion for reconsideration. Exhibit C, "Order Denying

Reconsideration."

Mr. Gumbs has therefore raised his constitutional claim at every available level of state-court proceedings, where the state courts rejected it on the merits.

## III.    JURISDICTION AND VENUE

Mr. Gumbs was convicted in Bronx County, New York. He is currently in the custody of the State of New York under post-release supervision. Mr. Gumbs properly brings this petition under 28 U.S.C. § 2254.[2] Venue is proper in the Manhattan courthouse of the Southern District of New York. *See* 28 U.S.C. § 2241(d); S.D.N.Y. Local Rule 83.3.

## IV.    TIMELINESS

Mr. Gumbs' habeas petition is timely under the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d). Mr. Gumbs' conviction became final on May 6, 2022, upon the Court of Appeals' denial of Mr. Gumbs' second motion for reconsideration of Mr. Gumbs' motion for leave to appeal from the judgment of the Appellate Division affirming Mr. Gumbs' conviction.  Exhibit C, "Order Denying Reconsideration." The instant habeas petition is therefore made within the applicable one-year limitations period. *See* 28 U.S.C. § 2244(d).

## V.    SUMMARY OF CLAIM

Mr. Gumbs advances one constitutional claim under the clearly established U.S. Supreme

---

[2] As of the date of this Petition, Mr. Gumbs' term of post-release supervision is due to expire on July 8, 2022, at which time his sentence will be fully served. Under 28 U.S.C. § 2254, the "in-custody" requirement is satisfied when the petitioner is subject to supervision at the time of filing. *See Maleng v. Cook*, 490 U.S. 488, 492-93 (1989); *see also Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994) ("[A] petitioner under supervised release may be considered 'in custody.'"). The requirement only applies at the time of filing. *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968); *Scanio*, 37 F.3d at 860. Mr. Gumbs' conviction, even once his sentence is fully served, constitutes a continuing injury which suffices to establish Article III standing throughout these proceedings. *See Sibron v. New York*, 392 U.S. 40, 55 (1968) (citing *U.S. v. Morgan*, 346 U.S. 502, 512-13 (1954)); *see also Pollard v. United States*, 352 U.S. 354 (1957); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *Evitts v. Lucey*, 469 U.S. 387 (1985). There is also applicable a clearly established presumption of continuing injury which arises from criminal convictions. *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (requiring the state to show "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction" in order to rebut the presumption).

Court law set out in *Miranda* v. *Arizona* and *Harris v. New York*, and then confirmed most notably in *James v. Illinois*: the prosecution violated Mr. Gumbs' Fifth Amendment rights by introducing Mr. Gumbs' Un-Mirandized Confession as part of its case in chief. Under these established precedents, the Un-Mirandized Confession could only be introduced into evidence to impeach Mr. Gumbs' own testimony. Instead, the prosecution used it as substantive evidence of guilt as part of its direct case without Mr. Gumbs having taken the stand. *See infra* Section VIII.

## VI.    EXHAUSTION

Mr. Gumbs robustly raised his constitutional claim before each of the state courts. *See supra* Section II. Mr. Gumbs thus "fairly presented" his theories to the state courts and the exhaustion requirement is therefore met. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) ("The exhaustion doctrine is satisfied if the claim has been 'fairly presented' to the state courts.").

## VII.    LEGAL STANDARD

### A.    The Antiterrorism and Effective Death Penalty Act

This petition is governed by the standard in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d).[3] Under AEDPA, a petitioner must show as a threshold matter that the Appellate Division's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the

---

[3] Because the Appellate Division's order is the "last reasoned opinion" from the state courts on Mr. Gumbs' claim, it is the relevant state-court decision for consideration of the procedural rules set forth in 28 U.S.C. § 2254(d). *See Wilson v. Sellers*, 485 U.S. __, 138 S.Ct. 1188 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). In that decision, the Appellate Division adopted the reasoning of the trial court and therefore both are discussed herein. *People v. Gumbs*, 195 A.D.3d 450 (1st Dep't 2021).

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1-2).

A decision is "contrary to" clearly established law "when the state court either has arrived at a conclusion that is opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court on a set of materially indistinguishable facts." *Garlick v. Lee*, 1 F.4th 122, 128-29 (2d Cir. 2021). If the state court correctly identifies the controlling legal principle but "unreasonably applies it to the facts of the particular case," that is an "unreasonable application" of clearly established law. *Id.* at 129. This requires something more than an incorrect ruling—the federal court must conclude that no "fairminded jurist" could agree with the state court's decision. *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam). Put differently, the state court's mistaken application of constitutional principles must have been "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Garlick*, 1 F.4th at 129.

Once a petitioner makes this threshold showing, judicial review is "unencumbered" by § 2254(d), see *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007), and a federal court may grant the writ if it determines, under a de novo standard of review, that Petitioner's conviction was obtained "in violation of the Constitution . . . of the United States," 28 U.S.C. § 2254(a); *see also Lewis v. Comm'r of Correction*, 957 F.Supp.2d 169, 173 (D. Conn. 2013). A petitioner need only show "actual prejudice" followed from the constitutional violation. *See Brecht v. Abrahamson*, 407 U.S. 619, 637 (1993); *see also Brown v. Davenport*, 142 S.Ct. 1510 (2022).

**B.**    **Mr. Gumbs' Constitutional Claim Under *Miranda v. Arizona* and Its Progeny**

In *Miranda v. Arizona*, the U.S. Supreme Court held that statements made during custodial interrogation by police officers are presumptively the products of coercion and therefore presumptively violate the Fifth Amendment right against self-incrimination. *See* 384 U.S. 436,

497-99 (1966). The Court held that "unless and until [Miranda] warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda*, 384 U.S. at 479. There is a single recognized exception to the admission of such evidence where it is introduced to impeach a testifying defendant, and even then, the evidence may not be used as substantive evidence of guilt. *Harris v. New York*, 401 U.S. 222 (1971). The Court has expressly foreclosed any further exception to *Miranda*'s exclusionary rule which might permit the prosecution to introduce the suppressed evidence at trial. *James v. Illinois*, 493 U.S. 307 (1990).

## VIII.   ARGUMENT

**The Trial Court's Decision Was Contrary to and an Unreasonable Application of *Miranda* and Its Progeny Because It Permitted the Use of Mr. Gumbs' Un-Mirandized Confession in the State's Case-in-Chief in Violation of Clearly Established Supreme Court Precedent.**

### 1.   *Miranda* and its exclusionary rule require suppression of the Un-Mirandized Confession.

*Miranda* warnings "must be given to a suspect in custody and subject to official interrogation." *U.S. v. Molina*, 368 F.Supp.2d 308, 311 (S.D.N.Y. 2005) (citing *Illinois v. Perkins*, 496 U.S. 292 (1990)). "Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in-custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought (the investigative intent requirement)." *U.S. v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004).

A person is considered "in custody" depending on "whether a reasonable person would have thought he was free to leave," and if not, "whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree

associated with formal arrest." *U.S. v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004).

Investigative intent may be shown either by "express questioning initiated by law enforcement" or its functional equivalent, including "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Molina*, 368 F.Supp.2d at 311 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)).

As the trial court first remarked, "resolution of this [suppression] motion does not require extended analysis." Exhibit D, Suppression Decision at p. 4. Mr. Gumbs was clearly in custody in the apartment when the officer questioned him "in order to have defendant point out where the contraband was, and no one had given [him] *Miranda* warnings." Exhibit D, at 4; Exhibit H, at 14-25. Mr. Gumbs was handcuffed behind his back by the rifle-carrying Emergency Services team and, according to Detective Adams, he was not free to leave. Exhibit E, at 19. The officer's question to Mr. Gumbs, "[W]as there anything in the apartment before we [start]," was express questioning initiated by law enforcement executing a search warrant, and would have been known to the police to be likely to elicit an incriminating response. Exhibit E, at 22. Thus, Mr. Gumbs' statement was made while subject to custodial interrogation and officers were required to give *Miranda* warnings prior to their questioning. None were given.

*Miranda* prescribes a bright-line exclusionary rule for remedying the failure to provide such warnings: "[T]he warnings required and the waiver necessary in accordance with our opinion today are… prerequisites to the admissibility of any statement made by a defendant." *Miranda*, 384 U.S. at 476.

This strictness of the exclusionary rule reflects the importance of the right it protects: "the privilege against self-incrimination [is] the essential mainstay of our adversary system." *Miranda*,

384 U.S. at 460. The Court considered and rejected several lesser alternatives which might limit the need to exclude such statements, noting both that it "will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given" and "waiver will not be presumed simply from the silence of the accused." *Miranda*, 384 U.S. at 468, 475.

The Court rejected any notion that "society's need for interrogation outweighs the privilege," observing that "the Constitution has prescribed the rights of the individual when confronted with the power of government… in the Fifth Amendment… That right cannot be abridged." *Miranda*, 384 U.S. at 479. It has repeatedly rebuffed prosecutorial attempts to circumvent the strictures of the rule.

> **2.     The Fifth Amendment allows only a single exception to *Miranda*'s exclusionary rule for the prosecution's use of the suppressed statement to impeach a testifying defendant.**

Within five years of the *Miranda* decision, the Supreme Court established what remains the only recognized exception to this constitutional rule. In *Harris v. New York*, the Court considered whether a defendant may be impeached with his own un-Mirandized statement. 401 U.S. 222, 225 (1971). The defendant was charged with twice selling heroin to an undercover police officer. *Id.* at 222-23. In response to the officer's testimony, the defendant took the stand in his own defense. In his direct testimony, he denied one of the two sales to the officer on the basis the product was baking powder. *Id.* at 223. But at the time of his arrest, he made a partially contradictory written statement to police. *Id.* The written statement was obtained in violation of *Miranda* and the prosecution had not attempted to use it in its case in chief, but on cross-examination, impeached the defendant with his prior un-Mirandized statement. *Id.*

The *Harris* court affirmed the conviction, holding there exists an exception to the exclusionary rule announced in *Miranda v. Arizona* which permits the prosecution to confront a testifying defendant with his prior inconsistent utterances. *Id.* at 226. The Court balanced the need

to aid the jury in assessing the defendant's credibility with the possibility that "impermissible police conduct will be encouraged thereby" and found, in the context of perjurious testimony by a defendant, that balance favored an exception to *Miranda*'s exclusionary rule. *Id.* at 225.

In reaching its decision, the Court considered the parallel doctrine then developing under the Fourth Amendment jurisprudence relating to unconstitutionally-obtained physical evidence, including the exclusionary rule announced in *Weeks v. United States*, 232 U.S. 383 (1914) (overruled by *Mapp v. Ohio*, 367 U.S. 643 (1961)) and one of its exceptions under *Walder v. United States*, 347 U.S. 62 (1954). The Court in *Walder* held that the Fourth Amendment's protections do not extend to "letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 66. So too, the *Harris* court held, the Fifth Amendment did not contain "a difference in principle that warrants a result different from that reached by the Court in *Walder*." *Harris*, 401 U.S. at 225.

Both *Harris* under the Fifth Amendment and *Walder* under the Fourth Amendment expressly based their exception for admitting unconstitutionally obtained evidence on the "defendant affirmatively resort[ing] to perjurious testimony." *Harris*, 401 U.S. at 224 (quoting *Walder*, 347 U.S. at 65). The exception reflected the Court's balancing the truth-seeking function of a trial with the need to protect the guarantees embodied in the Constitution and to deter unlawful police conduct. This limited exception is strict and requires inconsistency with the defendant's actual statements while testifying. *See, e.g.*, *U.S. v. Hinckley*, 672 F.2d 115, 133 n.117 (D.C. Cir. 1982) (per curiam) ("[T]he rationale of this exception to the exclusionary rule… simply will not support the government's desire to extend the exception to include use of tainted evidence for rebutting the substance of a defendant's testimony."); *Williams v. Poulos*, 11 F.3d 271, 287 n.35 (1st Cir. 1993) ("In criminal law, evidence obtained in violation of the Fourth Amendment can be

used for the limited purpose of attacking a testifying defendant's credibility… on matters 'plainly within the scope of the defendant's direct examination.'"); *U.S. v. Williams*, 181 F.Supp.2d 267, 288 and n.15 (S.D.N.Y. 2001) ("[W]hile the use of a defendant's statement to impeach his testimony is a well-settled exception to the exclusionary rule, the Government's other 'reservations' are significantly more problematic.").[4]

But even in those limited circumstances, by confining the exception to impeachment of a testifying defendant, the Supreme Court maintained *Miranda*'s central holding that the excluded statements could not be used as "substantive evidence of guilt" in the government's case in chief or otherwise. *U.S. v. Havens*, 446 U.S. 620, 628 (1980).

### 3. The Supreme Court has expressly rejected any expansion of the exception and repeatedly affirmed that un-Mirandized statements may not be used in the prosecution's case in chief.

The Supreme Court has repeatedly revisited the scope of the exclusionary rule and each time confirmed that there is just a single exception to its mandate which requires the statement be introduced to impeach a testifying defendant. In doing so, it refused to afford the prosecution any other basis for using a defendant's un-Mirandized statements.

In *U.S. v. Havens*, the Supreme Court clarified that the exception announced in *Harris* applied to testimony by a defendant while under cross-examination which was "plainly within the scope" of his direct testimony. 446 U.S. 620, 627 (1980). In doing so, the Court "reaffirmed [its] assessment of the competing interests" discussed in *Walder* and *Harris* and maintained this "evidence that has been illegally obtained […] is inadmissible on the government's direct case, or

---

[4] The rule has also been applied to evidence improperly secured in violation of the Sixth Amendment. *See, e.g., Michigan v. Harvey*, 494 U.S. 344, 350-51 (1990) (finding that a defendant who testifies may be impeached with evidence secured in violation of his Sixth Amendment right to counsel but reaffirming that it may not be used during the prosecution's case in chief); *Kansas v. Ventris*, 556 U.S. 586, _ (2009) (same where statement was secured in violation of *Massiah*, noting it was "not admissible in the prosecution's case in chief" and only became admissible to impeach testifying defendant).

otherwise, as substantive evidence of guilt." *Havens*, 446 U.S. at 627-28; *see also U.S. v. Morla-Trinidad*, 100 F.3d 1, 5-7 (1st Cir. 1996) (noting that even where a defendant testifies, under *Harris* and *Havens*, "the government may not smuggle in the impeaching opportunity with a cross-examination that has too tenuous a connection with any subject opened upon direct examination") (internal citation omitted).

In *James v. Illinois*, the State asked the Supreme Court to expand the "impeachment exception to permit prosecutors to use illegally obtained evidence to impeach the credibility of defense witnesses." 493 U.S. 307, 313 (1990). *James* involved a murder prosecution in which several eyewitnesses for the state testified that the shooter had long, red hair and identified the defendant as the shooter. 493 U.S. at 309. After the shooting, the defendant had been arrested by police emerging from a hair salon with curly black hair—an appearance he would present at trial— and had reportedly told police that he went to the salon to have his hair "dyed black and curled in order to change his appearance." *Id.* The court suppressed that statement because detectives lacked probable cause for the warrantless arrest. *Id.* at 310.

The defendant did not testify in his own defense and instead called a friend of the family as a defense witness. *Id.* The friend testified that, at the time of the shooting, the defendant's hair was black. *Id.* The prosecution then introduced the defendant's suppressed statement to impeach the defense witness, and later secured a conviction. *Id.*

The Supreme Court reversed the conviction and unambiguously rejected any further expansion of the lone exception to the exclusionary rule. *Id.* at 313. Reviewing its prior decisions (above), it began by affirming that it has "insisted throughout this line of cases that 'evidence that has been illegally obtained … is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.'" *Id.* at 313. Then, turning to the balancing approach taken in *Harris*

and *Walder*, the Court weighed (1) the needs to promote a trial's truth-seeking function against (2) the deterrent effect on which the exclusionary rule is based in considering whether to expand the exceptions announced therein. *Id.* at 313.

Specifically, the Court reasoned that the exception announced in *Harris* "penalizes defendants for committing perjury" but leaves defendants free to testify truthfully "without opening the door to impeachment by carefully avoiding any statements that directly contradict the suppressed evidence." *Id.* at 314. It therefore furthers the truth-seeking function by discouraging perjury and without discouraging truthful testimony. *Id.*

In contrast, the Court considered that "expanding the impeachment exception to encompass the testimony of all defense witnesses would not have the same beneficial effects." *Id.* Other witnesses are "far more likely" to be deterred by "the mere threat of a subsequent criminal prosecution for perjury" than the defendant who is "already facing conviction for the underlying offence." *Id.* More significantly, the Court said, expanding the exception "would chill some defendants from presenting their best defense and sometimes any defense at all—through the testimony of others… [where] one or more of their witnesses, in a position to offer truthful and favorable testimony, would also make some statement in sufficient tension with the tainted evidence to allow the prosecutor to introduce that evidence for impeachment." *Id.* at 314-15. Indeed, this concern touches not only the rights underlying *Miranda* but also on another fundamental constitutional right: the Constitutional rights to a fair trial and to present a defense. U.S. Const. amends. VI, XIV; *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

The Court in *James* recognized that this problem applies even to "friendly witnesses" for the defense who "defendants often cannot trust… to testify without subjecting themselves to impeachment, simply due to insufficient care or attentiveness… [which] is magnified when

defendants must call witnesses to testify despite having had only a limited opportunity to consult with or prepare them in advance." *James*, 493 U.S. at 315. These constitutional concerns are magnified when examining prosecution witnesses or "hostile" defense witnesses, who "likely will not share the defendants' concern for avoiding statements that invite impeachment through contradictory evidence." *Id.*

It is this realization, the Court held, which "alters the balance of values underlying the current impeachment exception governing defendants' testimony" and requires that the exception extend no further. *Id.* at 317. The "truth-seeking rationale supporting the impeachment of defendants in *Walder* and its progeny does not apply to other witnesses with equal force." *Id.*

On the other side of the scale, the Court also found that expanding the impeachment exception "would significantly weaken the exclusionary rule's deterrent effect on police misconduct." *Id.* By expanding the exception, the "expected value to the prosecution of illegally obtained evidence" would be enhanced because it would (1) "vastly increase the number of occasions on which such evidence could be used" and (2) "deter defendants from calling witnesses in the first place," thereby limiting the amount of exculpatory evidence presented. *Id.* at 318. This would "stack[] the deck heavily in the prosecution's favor," *id.*, but "it seems no more appropriate for the State to brandish such evidence as a sword with which to dissuade defendants from presenting a meaningful defense through other witnesses." *Id.* at 317; see also *U.S. ex rel. Hill v. Pinto*, 394 F.2d 470, 477 (3d Cir. 1968) ("[T]he State reached far beyond neutralization of the slight disadvantage of the inference and achieved the admission of substantive evidence of petitioner's guilt….").

Therefore, the Court held, "Because expanding the exception to encompass the testimony of all defense witnesses would not further the truth-seeking value with equal force but would

appreciably undermine the deterrent effect of the exclusionary rule, we adhere to the line drawn in our previous cases." *James*, 493 U.S. at 320.

The federal courts have repeatedly recognized the clear line which has been so drawn: "[A]lthough the Supreme Court regularly asks whether the exclusionary rule applies to one or another stage of a proceeding… [it] has never held that the answer is 'sometimes.' The rule applies, or it does not. It applies to the prosecution's case in chief and to the cross-examination of most witnesses, but not to cross-examination of the defendant." *U.S. v. Sanders*, 743 F.3d 471, 473 (7th Cir. 2014); *see also Michigan v. Harvey, supra; U.S. v. Stuckey*, 317 Fed.Appx. 48, 50 (2d Cir. 2009) (unpublished) ("The government now concedes that these [un-Mirandized] statements were admitted in error. [The defendant] did not testify, and his statements therefore were not admissible despite the *Miranda* flaw, inasmuch as they were not being used to impeach his testimony."); *Williams v. Poulos*, 11 F.3d 271, 287 n.35 (1st Cir. 1993) ("In criminal law, evidence obtained in violation of the Fourth Amendment can be used only… to impeach the criminal defendant him/herself; it cannot be used to impeach other witnesses, even defense witnesses."); *U.S. v. Chaparro*, 956 F.3d 462, 481 (7th Cir. 2020) ("[T]he Supreme Court has limited the scope of this impeachment exception to testifying defendants; other defense witnesses cannot be impeached with suppressed evidence."); *Hendrickson v. Norris*, 224 F.3d 748, 750 n.3 (8th Cir. 2000) (recognizing the Court "refused to extend *Harris* and *Hass* to the cross-examination of defense witnesses other than the defendant"); *Esposito v. Warden*, 818 Fed.Appx. 962, 972 (11th Cir. 2020) (unpublished) ("[Defendant] is correct that the videotaped confession would have been inadmissible for rebuttal purposes because the confession was obtained in violation of his *Miranda* rights."); *U.S. v. Jackson*, 415 F.3d 88, 100-101 (D.C. Cir. 2005) (Edwards, C.J., concurring) ("[W]e are invariably tested when asked to exclude evidence that tends to prove a defendant's

guilt… In applying the exclusionary rule, courts must focus on systemic effects… to ensure that individual liberty from arbitrary or oppressive police conduct does not succumb to the to the inexorable pressure to introduce all incriminating evidence…") (quoting *James*, 493 U.S. at 319-20); *U.S. v. Williams*, 181 F.Supp.2d 267, 288 and n.15 (S.D.N.Y. 2001) ("[W]hile the use of a defendant's statement to impeach his testimony is a well-settled exception to the exclusionary rule, the Government's other 'reservations' are significantly more problematic.").

It has thus been clearly established, by decades of U.S. Supreme Court and federal precedent, that un-Mirandized statements are never admissible in the prosecution's case in chief and may only be introduced to impeach a testifying defendant. Even then, they may not be used as substantive evidence of guilt.

It is beyond dispute that the prosecution introduced Mr. Gumbs' statement as part of its case in chief, before Mr. Gumbs ever took the stand, making it substantive evidence of Mr. Gumbs' guilt and, in doing so, violated his constitutional rights and clearly established Supreme Court precedent. Exhibit E, at 163.

### 4. The state courts' decision affirming the use of Mr. Gumbs' Un-Mirandized Confession was contrary to and an unreasonable application of clearly established federal law.

The Appellate Division's decision ruling the admission of the Un-Mirandized Confession a proper exercise of discretion was both contrary to and an unreasonable application of clearly established federal law. It erroneously privileged a state rule of evidence over the protection of a clearly established constitutional right.[5]

The Appellate Division found the trial court properly exercised its discretion in admitting

---

[5] New York maintains a state rule of evidence called the "opening the door" rule, under which a defendant may open the door "to the admission of otherwise admissible evidence" where "the evidence or argument said to open the door is incomplete and misleading… [and the] inadmissible evidence is reasonably necessary to correct the misleading impression." *People v. Schlesinger Elec. Contractors, Inc.*, 143 A.D.3d 516, 517 (1st Dep't 2016).

the Un-Mirandized Confession because defense counsel's cross-examination of the prosecution's witness "suggested that the police had no apparent reason for releasing the other two people and singling out defendant." *People v. Gumbs*, 195 A.D.3d 450, 450 (1st Dep't 2021). It relied on no federal authority to support its decision, citing only three New York cases: *People v. O'Garra*, 16 A.D.3d 251 (1st Dep't 2005), *People v. Smith*, 270 A.D.2d 132 (1st Dep't 2000), and *People v. Reid*, 19 N.Y.3d 382 (2012) (overruled by *Hemphill v. New York*, 142 S.Ct. 681 (2022)).

In a summary opinion, the court in *Smith* found only that the defense had opened the door to a statement that had been suppressed following a *Huntley* hearing. *Smith*, 270 A.D.2d at 132. The basis for the original suppression is unclear from the record and could well have flowed from a matter of state law but, in any event, the defendant in that case opened the door by *testifying*. *Id.* In *O'Garra*, the Appellate Division affirmed the application of New York's "opening the door" rule to the admission of a confidential informant's hearsay against the defendant. 16 A.D.3d at 252.[6] Finally and most critically, the Appellate Division adopted the trial court's interpretation of *People v. Reid*, in which the New York Court of Appeals held that a defendant may open the door to evidence otherwise barred at trial by the Confrontation Clause, see *Reid*, 19 N.Y.3d at 388, and applied the same holding to Mr. Gumbs' dissimilar constitutional claim here. *Reid*, however, could not support the state courts' decision for several reasons: (1) it related to the Confrontation Clause right and not *Miranda*'s exclusionary rule, *id.* at 387; (2) it involved a testifying defendant, *id.* at 386; and (3) the decision was also contrary to settled constitutional law and subsequently expressly overruled by the U.S. Supreme Court. *Hemphill v. New York*, 142 S.Ct. 681 (2022).

There is no support under the U.S. Constitution or federal law for the trial court's holding,

---

[6] It is unclear if or how this evidence contravened the defendant's constitutional rights, but context suggests at best it was a violation of a trial right- such as that articulated in *Bruton v. U.S.*, 391 U.S. 123 (1968)- and did not implicate an exclusionary rule involving admission of unconstitutionally-obtained evidence.

adopted and affirmed by the Appellate Division, that "[it] [d]oesn't really matter what the evidence is if you open the door to it by trying to mislead the jury." Exhibit E, at 70; *see also Gumbs*, 195 A.D.3d at 450. The decision is expressly contrary to *Miranda* and the related cases which invariably forbid the use of excluded statements as substantive evidence of guilt, be it in the prosecution's case in chief or otherwise. *See, e.g.*, *James v. Illinois*, 493 U.S. 307, 313 (1990) ("The Court insisted throughout this line of cases that evidence that has been illegally obtained… is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.") (internal citation omitted). By permitting the prosecution to use Mr. Gumbs' Un-Mirandized Confession in its case in chief, the court reached a result opposite to that repeatedly reached by the U.S. Supreme Court. *See Garlick v. Lee*, 1 F.4th 2021 (2d Cir. 2021) ("A state court decision is contrary to such clearly established law when the state court… has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court….") (internal citation omitted).

It is further contrary to the decisions which recognize only a single exception to the rule and precisely limit such statements' use to the contradiction of a testifying defendant. *See Harris v. New York*, 401 U.S. 222, 225 (1971); *James*, 493 U.S. at 313; *see also U.S. v. Sanders*, 743 F.3d at 473 et al., *supra* p. 27. The failure to recognize this rule resulted in a decision contrary to clearly established Supreme Court precedent.

The State argued in the Appellate Division and Court of Appeals briefing that *Harris* and *James* relate to "impeachment" rather than "opening the door," and thus do not apply to this circumstance. *See generally*, Exhibits B and C. Tellingly, this argument was unburdened by citations to any Supreme Court or other federal caselaw. This is not surprising, for the Supreme Court has never found a circumstance in which a statement elicited in violation of *Miranda* was properly admitted under an "opening the door" theory, nor any circumstance in which it was

properly introduced during the prosecution's case in chief and without a defendant's contrary testimony. Further, notwithstanding the State's difference in name, there would be no difference in substance, for there can never be an "impeachable" statement which does not "open the door" (and vice versa). The privilege against self-incrimination is a fundamental right which cannot be so easily circumvented.

Even if the state court's decision was not contrary to clearly established Supreme Court precedent, it would nevertheless be an unreasonable application of cases like *Harris* and *James*, which show the Appellate Division's application to be an "error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Garlick*, 1 F.4th at 129. The Court's decision in *James* foreclosed an expansion of the exception to the exclusionary rule on an "opening the door" theory. Again, the question in *James* was whether unconstitutionally obtained statements could be used to impeach defense witnesses other than the defendant. *James*, 493 U.S. at 311. The Court balanced the two factors identified in *Harris*, promoting truth-seeking and deterring police misconduct, and confirmed extending the circumstances in which the statements could be introduced would detrimentally affect both factors. *Id.* at 313. It would discourage the presentation of any defense through other witnesses and enhancing the likelihood the illegally obtained evidence would be used. *Id.*

These decisive concerns apply even more strongly in Mr. Gumbs' case, where mere questioning of a prosecution witness created "potential [for] speculation" by jurors and led to the introduction of the Un-Mirandized Confession. Exhibit E, at 113. By allowing defense questioning of the state's own witnesses to open the door to illegally obtained evidence, the state courts' decision would extend beyond the wildest imaginable expansion of *James*, for here it threatens to inhibit not only the presentation of a defense case, but a defendant's separate Sixth Amendment

right to cross-examine witness and challenge the State's case itself. Expanding the exclusionary rule exception to the examination of prosecution witnesses is fundamentally and irreconcilably inconsistent with the Court's decisions in *Miranda*, *Harris*, and *James*.[7]

The importance of the rights protected by *Miranda* cannot be understated, and in this regard, the facts in *James* are illustrative. There, eyewitnesses testifying for the prosecution identified the shooter as having long red, slicked-back hair. *Id.* at 309-10. In a suppressed statement to police, the defendant had said he used to have long red hair but went to a salon to change his appearance (to have short, curly black hair) after the shooting occurred. *Id.* at 309. The defendant did not testify but called a friend to testify that the defendant's hair had always been short and black including at the time of the shooting, a statement obviously contradicted by the defendant himself. *Id.* at 310. Even so, the U.S. Supreme Court held that offering this witness for the defense still would not allow the prosecution to use the defendant's suppressed statement to contradict the witness. *Id.* at 319-20. The Court recognized that the "cost to the truth-seeking process of evidentiary exclusion invariably is perceived more tangibly in discrete prosecutions than is the protection of privacy values through deterrence of future police misconduct… however, we must… ensure that individual liberty from arbitrary or oppressive police conduct does not succumb to the inexorable pressure to introduce all incriminating evidence, no matter how obtained…." *Id.* at 320.

The state court's decision to admit Mr. Gumbs' Un-Mirandized Confession unconstitutionally and unreasonably succumbed to those pressures. It is accordingly entitled to no deference under AEDPA.

---

[7] Notably, even the four dissenting Justices in *James* drew a line as to when unconstitutionally obtained evidence might be used at trial. Justice Kennedy, writing for the dissent, deemed it "certain" that evidence flowing from unlawful police behavior must be "lost in the [prosecution's] case in chief." *James*, 493 U.S. at 329 (Kennedy, J., dissenting).

> **5.     The introduction of Mr. Gumbs' Un-Mirandized Confession caused actual prejudice because it amounted to a full confession and the prosecution's case was otherwise weak.**

The Un-Mirandized Confession's admission substantially prejudiced Mr. Gumbs. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The suppressed statement—that the guns were in the bedroom closet—"amounts to a confession" of the crime charged: knowing possession of a weapon. Exhibit E, at 407. Courts have repeatedly recognized the special prejudice which attends confessions. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him… the admissions come of a defendant come from the actor himself… Certainly, confessions have profound impact on the jury….") (internal citation omitted); *see also U.S. v. Taylor*, 745 F.3d 15, 27 (2d Cir. 2014) ("The court conducting a harmless-error inquiry must appreciate the indelible impact a full confession may have on the trier of fact; it may be devastating to a defendant.") (internal citation omitted); *Zappulla v. New York*, 391 F.3d 462, 473 (2d Cir. 2004) ("The persuasive influencing of a signed confession cannot be underestimated.") (citing *Fulminante*, 499 U.S. at 296).

As discussed, without the Un-Mirandized Confession, the prosecution's case was wholly circumstantial, consisting of two officers who testified to their search of the apartment and a firearms expert who testified the weapons were operable. The prosecution needed the jury to believe beyond a reasonable doubt that because Mr. Gumbs knowingly possessed other things in his cohabited apartment, he knowingly possessed the weapons as well. No witness observed Mr. Gumbs physically possessing or even talking about the firearms, no witness testified to any DNA or other forensic evidence which could connect Mr. Gumbs to the weapons, and neither of the other individuals staying at the apartment would be called by the prosecution about what they might have witnessed. Put simply- the State's flimsy case required the jury to infer, beyond a

reasonable doubt, that because the guns were in an apartment where Mr. Gumbs resided with two other people, he must have known they were present. The prosecution had no other way to establish the key element that Mr. Gumbs knowingly possessed the weapons found inside two bags in the co-habited apartment. Accordingly, the prejudice from the confession's introduction cannot be overstated. *See Fulminante*, 399 U.S. at 297 ("Absent the confessions… the physical evidence from the scene and other circumstantial evidence would have been insufficient to convict.").

The confession's introduction as part of the prosecution's case in chief then resulted in compounding downstream prejudice to Mr. Gumbs' defense, as he was then required to take the stand—which his counsel repeatedly advised the jury he would not do.[8] *See Fulminante*, 399 U.S. at 300 ("[T]he admission of the first confession led to the admission of other evidence prejudicial to [the defendant]… had the confession not been admitted, there would have been no reason for [the witness] to testify and thus no need to impeach his testimony.").

Under direct examination, by way of establishing witness background, Mr. Gumbs testified that he "generally supported [himself] through legal means over the years," including through his work as a certified security guard, licensed cab driver, and as a construction worker. Exhibit E, at 241-43. The court then held, based on an overzealous interpretation of New York's "opening the door" doctrine not dissimilar to the interpretation used to admit the Un-Mirandized Confession, that Mr. Gumbs opened the door to a variety of evidence previously excluded on grounds of being irrelevant and prejudicial, Exhibit E, at 266, including past convictions for drug-related crimes and evidence of the drugs discovered at Mr. Gumbs' apartment, for the purpose of impeaching his testimony. Exhibit E, at 266, 290-91, 328.

Defense counsel strenuously objected that Mr. Gumbs was not being tried for any drug-

---

[8] The record is replete with statements by counsel that Mr. Gumbs would not testify, supra n. 1, and the inescapable conclusion is that he was compelled to change course by the introduction of his unconstitutionally-obtained statement.

related crime. Exhibit E, at 266 ("The issue in this case is did [Mr. Gumbs] possess weapons not

did he possess marijuana, not that he's a criminal, not that he's a drug seller. They're trying to

paint him as a criminal propensity to commit crimes. … It's a gun case, not a marijuana case.").

Yet, on the basis of Mr. Gumbs' testimony, the prosecution successfully introduced evidence

which suggested that Mr. Gumbs "is a big-time drug dealer." Exhibit G, at 80. Most damaging was

the introduction of a textbook "drug bust" publicity photograph depicting drugs, guns, drug

paraphernalia, and cash seized from the apartment and arrayed to precisely suggest that. Exhibit

F, "People's Exhibit 23;" Exhibit E, at 327-30. Detective Adams was recalled to testify to details

such as the quantities of drugs and paraphernalia, as well as the "tons of cash in denominations

consistent with selling illicit substances," Exhibit G, at 55, which were found in the apartment. *See*

Exhibit E, at 7, 30, 33, 34, 43, 46 47. Collectively, the evidence could only unfairly paint Mr.

Gumbs as a "big-time drug dealer," Exhibit G, at 80, which was precisely why the court had

initially ruled it all inadmissible. Collectively, this evidence tended to paint Mr. Gumbs as a violent

drug dealer in a trial where the only pertinent question was whether he knowingly possessed the

firearms found in the closet.

   At every turn, the prosecution sought to open the door to unconstitutional and otherwise

inadmissible evidence alike, "reach[ing] far beyond neutralization of the slight disadvantage of the

inference and achiev[ing] the admission of substantive evidence of petitioner's guilt." *U.S. ex rel.*

*Hill v. Pinto*, 394 F.2d 470, 477 (3d Cir. 1968). Its success in bringing in the Un-Mirandized

Confession paid immense dividends, as it was then able to transform the case into a drug trial in

which two of the four days of trial testimony focused on crimes not charged. The concerns

enunciated by the Supreme Court in *James* came to pass—that the court so readily found the door

opened to certain evidence illustrates precisely the danger of any expansion of the impeachment

exception to the exclusionary rule. *James*, 493 U.S. at 314-16.

## IX.    CONCLUSION

Decades of U.S. Supreme Court precedent foreclosed the state courts' decision to extend New York's "opening the door" doctrine this far. There is a single exception to *Miranda*'s exclusionary rule which permits the use of un-Mirandized statements only to impeach a testifying defendant. This exception could not apply here before the prosecution had even finished examining its first witness. In *James v. Illinois*, the U.S. Supreme Court confirmed that there is no room for expansion of the exception: the only circumstance where the prosecution may use an un-Mirandized statement is to impeach a testifying defendant. Throughout the history of the exclusionary rule, the Court has steadfastly maintained such statements cannot be used in the prosecution's case in chief or otherwise as substantive evidence of guilt. Mr. Gumbs' conviction was secured because the prosecution violated this constitutional guarantee.

Mr. Gumbs respectfully submits that a writ of habeas corpus should be issued under 28 U.S.C. § 2254, and that his conviction be vacated and he be released from custody.

Dated: New York, New York
　　　 June 3, 2022

　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　Caprice R. Jenerson, Attorney-In-Charge
　　　　　　　　　　　　　　Office Of The Appellate Defender

By: _____

　　　　David Bernstein, Managing Attorney
　　　　　State Bar No. 4457263
　　　　　dbernstein@oadnyc.org

　　　　11 Park Place Suite 1601
　　　　New York, New York 10007-2815
　　　　Tel: (212) 401-4141

　　　　*Attorneys for Petitioner Secunda Gumbs*

　　　　　Darren Pouliot
　　　　　　State Bar No. 5660691
　　　　　　dpouliot@orrick.com

　　　　Orrick, Herrington & Sutcliffe LLP
　　　　51 W. 52nd Street
　　　　New York, New York 10019-6142
　　　　Tel: (212) 506-5000

　　　　*Of Counsel*