UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECUNDA GUMBS | ANSWER |
| Petitioner, | 1:22-CV-04659-VEC-GWG |
| -against- | |
| TINA M. STANFORD, NEW YORK STATE BOARD OF PAROLE, Respondent. | |

ANSWER IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

Matthew B. White, an attorney duly admitted to practice before the bar of this Court, declares under penalty of perjury pursuant to 28 U.S.C. Section 1746, that:

1.      I am an Assistant District Attorney in the office of DARCEL D. CLARK, District Attorney of Bronx County, and by arrangement with the Attorney General of the State of New York, we represent respondent.

2.  This Answer is filed in opposition to the petition for a writ of habeas corpus brought by petitioner Secunda Gumbs.  Except for what is stated herein, we dispute the facts as alleged by petitioner.  The allegations of fact herein are based upon a review of records possessed by the District Attorney, Bronx County, unless otherwise indicated.

3.   Petitioner seeks to set aside a June 15, 2017, judgment of the New York State Supreme Court, Bronx County (Best, J.).  By that judgment, petitioner was convicted, after a jury trial, of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) (two counts). The court sentenced petitioner to concurrent determinate prison terms of five years to be followed by five years of post-release supervision. Petitioner has fully served his sentence; he completed his post-release supervision on June 8, 2022.

4.   Annexed hereto as Exhibits are the Felony Complaint and Indictment.

5.   For the reasons set forth herein and in the accompanying memorandum of law, the petition should be denied.

WHEREFORE, the petition for a writ of habeas corpus should be denied, without an

evidentiary hearing, pursuant to Rule 8(a) governing 28 U.S.C. Section 2254 cases.


Dated:      Bronx, New York
            August 29, 2022


                                    Attorney for Respondent

                                    Darcel D. Clark
                                    District Attorney
                                    New York County
                                    198 East 161 Street
                                    Bronx, New York 10451
                                    (718) 838-7610


                            By:_____
                                    Matthew B. White (MW-1922)
                                    Assistant District Attorney


cc:    David Bernstein, Esq.
       Attorney for Petitioner
       Office of the Appellate Defender
       11 Park Place, Suite 1601
       New York, NY 10007
       (Via ECF)

EXHIBITS

CRIMINAL COURT OF THE CITY OF NEW YORK
· BRONX COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

v.

1. SECUNDA GUMBS M/30
   a.k.a. BEZ
   Arrest# B15621133

Defendant



**2015BX017033**

STATE OF NEW YORK

COUNTY OF THE BRONX

PO THOMAS ADAMS of 44 PCT,  Shield# 001483,  states that on or about April 10, 2015 at approximately 6:15 AM at inside of 1361 College Avenue, Apartment 2H, County of the Bronx, State of New York,

THE DEFENDANT COMMITTED THE OFFENSES OF:

| | | |
|---|---|---|
| 1 (F) P.L. 265.03 (3) * | Criminal Possession of a Weapon 2^ DQO |
| 2 (F) P.L. 221.25 | Criminal Possession of Marijuana 2^ DQO |
| 3 (F) P.L. 265.02 (1) | Criminal Possession of a Weapon 3^ DQO |
| 4 (F) P.L. 221.20 | Criminal Possession of Marijuana 3^ DQO |
| 5 (F) P.L. 265.01-b(1) | Criminal possession of a firearm |
| 6 (M) P.L. 221.15 | Criminal Possession of Marijuana 4^ DQO |
| 7 (M) P.L. 265.01 (1) | Criminal Possession of a Weapon 4^ DQO |
| 8 (M) P.L. 221.10 (2) | Criminal Possession of Marijuana 5^ DQO |
| 9 (M) A.C. 10-131 (i) (3) | Possession of Ammunition |
| 10 (V) A.C. 10-304 (a) | Certificates of Registration |

IN THAT THE DEFENDANT DID: possess a loaded firearm and such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this section if such possession takes place in such person's home or place of business; knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing marijuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than sixteen ounces.; commit the crime of Criminal Possession of a Weapon in the fourth degree, subdivisions one, two three or five of section 265.01 and has been previously convicted of any crime; knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing marijuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than eight ounces.; possess any firearm; knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than two ounces.; knowingly and unlawfully possess any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, black jack, bludgeon, plastic knuckles, metal knuckles, chucka stick, sand bag, sandclub, wrist-brace type slingsshot or slungshot, shirken or "Kung Fu star"; knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than twenty-five



002346071

Page 1 of 3

grams.; not being authorized to possess a pistol or revolver within the City of New York to possess pistol or revolver ammunition provided that a dealer in rifles and shotguns may possess such ammunition and possess a rifle or shotgun unless said person is the holder of a certificate of registration for such rifle or shotgun.

THE GROUNDS FOR THE DEPONENT'S BELIEF ARE AS FOLLOWS:

Deponent states that at the above time and place, deponent entered the above location pursuant to a search warrant issued by the Honorable Frank P. Nervo of the Criminal Court of Bronx County on April 4, 2015 and valid for ten (10) days thereafter, and that he observed said location to be a one (1) bedroom location, and that defendant and a female individual inside of the bedroom of the above location, and that he observed another male individual inside of the living room of the above location.

Deponent further states that defendant stated, in sum and substance: THERE ARE TWO GUNS IN THE CLOSET AND THE OTHER STUFF IS IN THE KITCHEN.

Deponent further states that he observed defendant to have in his custody and control, inside of the bedroom closet of the above location, one Addidas handbag that housed one (1) black .357 caliber revolver loaded with three (3) .357 rounds as well as three (3) .38 caliber rounds of ammunition (each round is a metal casing topped with a metal projectile) inside of the cylinder of said revolver, and that said handbag further housed three (3) additional loose .38 caliber rounds and eight (8) additional loose .357 caliber rounds of ammunition (each round is a metal casing topped with a metal projectile).

Deponent further states that he observed inside of said bedroom closet, one (1) black gym bag that housed one (1) Hi-Point 9MM caliber rifle as well as two (2) magazines each containing ten (10) rounds of 9MM ammunition (each round is a metal casing topped with a metal projectile)., that said gym bag also housed one (1) box containing nine (9) rounds of 9MM caliber ammunition (each round is a metal casing topped with a metal projectile), and that defendant does not have a certificate of registration for said rifle.

Deponent further states that he observed from various locations inside of said bedroom approximately five thousand seven hundred and thirty eight ($5738) dollars of United States Currency.

Deponent further states that he observed inside of the refridgerator in the kitchen of the above location, two (2) four gallon Tupperware containers collectively containing approximately ninety-eight plastic (98) bags each containing a dried green leafy substance with a distinctive odor.

Deponent further states that he observed inside of the lower kitchen cabinet of the above location, four (4) one gallon ziplock bags each containing a dried green leafy substance with a distinctive odor, two (2) tupperware containers collectively housing approximately thirty eight (38) ziplock bags each containing a dried green leafy substance with a distinctive odor, three (3) digital scales and nine hundred (900) empty ziplock bags as well as approximately seven hundred and fifty ($750) dollars of United States Currency.

Deponent further states that he observed inside of the upper kitchen cabinet, lease renewal paperwork bearing defendant's name as well as the above location.

002346071

Page 2 of 3

rax server          4/10/2015 8:51:          PAGE   4/004   rax server

        Deponent further states that he reviewed defendant's criminal history as
maintained by the Department of Criminal Justice Services which revealed that
defendant was previously convicted of Penal Law 221.40 on January 26, 2015
(Docket 2014NY071487), Penal Law 221.40 on March 13, 2014 (Docket #
2013NY076767), and Penal Law 221.15 (March 13, 2014 (Docket # 2013NY068462).

        Deponent states, that based upon deponent's training and experience, which
includes training in the recognition of controlled substance and marijuana, a
dried, green leafy substance with a distinctive odor, and their packaging, the
aforementioned substances are alleged and believed to be MARIJUANA with an
aggregate in excess of sixteen ounces.

                        FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE
                        AS A CLASS A MISDEMEANOR PURSUANT TO P.L. 210.45



_4/10/15   2047   Po_
DATE and TIME                    SIGNATURE

002346071

                                        Page 3 of 3

I N D I C T M E N T

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K

C O U N T Y   O F   B R O N X

PEOPLE OF THE STATE OF NEW YORK
AGAINST

(J)  GUMBS, SECUNDA AKA BEZ  - AFO/VFO
         DEFENDANT: 2015BX017033

INDICTMENT #:  *1334-15*
GRAND JURY #: 41349/2015

COUNTS

CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE
CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
CRIMINAL POSSESSION OF A FIREARM
CRIMINAL POSSESSION OF A FIREARM
CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE
CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE

Date 3|15|19
I hereby certify that the foregoing paper is a true
copy of the original thereof filed in my office.
Luis M. Diaz
County Clerk and Clerk of
the Supreme Court Bronx County
NO FEE-OFFICIAL USE

ORIGINAL

MAY 0 8 2015

C Panel
4th Term
APRIL 29, 2015
A TRUE BILL

_____
FOREPERSON

ROBERT T. JOHNSON
DISTRICT ATTORNEY

## FIRST COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS A LOADED FIREARM, THAT BEING A REVOLVER, SUCH POSSESSION BEING IN VIOLATION OF SUBDIVISION ONE OF PENAL LAW SECTION 265.02.

THE SUBJECT MATTER OF THIS COUNT IS AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

## SECOND COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS A LOADED FIREARM, THAT BEING AN ASSAULT WEAPON, SUCH POSSESSION BEING IN VIOLATION OF SUBDIVISION ONE OF PENAL LAW SECTION 265.02.

THE SUBJECT MATTER OF THIS COUNT IS AN ARMED FELONY AS THAT TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

## THIRD COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID KNOWINGLY AND UNLAWFULLY POSSESS AN ASSAULT WEAPON, THAT BEING A RIFLE.

FOURTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS A REVOLVER.

FIFTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS AN ASSAULT WEAPON.

SIXTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A FIREARM COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS ANY FIREARM, THAT BEING A  REVOLVER.

SEVENTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A FIREARM COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS ANY FIREARM, THAT BEING AN ASSAULT WEAPON.

EIGHTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS A REVOLVER.

NINTH COUNT

THE GRAND JURY OF THE COUNTY OF THE BRONX BY THIS INDICTMENT, ACCUSES THE DEFENDANT SECUNDA GUMBS AKA BEZ OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, SECUNDA GUMBS AKA BEZ, ON OR ABOUT APRIL 10, 2015, IN THE COUNTY OF THE BRONX, DID POSSESS AN ASSAULT WEAPON.

ROBERT T. JOHNSON
DISTRICT ATTORNEY

GRAND JURY REPORT

COUNTY: BRONX

INDICTMENTS#          GRAND JURY # 41349/2015   FINDING: INDICTED

| DEFENDANTS | CORRESPONDING DOCKETS |
|---|---|
| 1. GUMBS, SECUNDA AKA BEZ | 2015BX017033 |

INDICTMENT CHARGES

CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE
P.L. 265.03(3)
CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE
P.L. 265.03(3)
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
P.L. 265.02(7)
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
P.L. 265.02(1)
CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
P.L. 265.02(1)
CRIMINAL POSSESSION OF A FIREARM
P.L. 265.01-b(1)
CRIMINAL POSSESSION OF A FIREARM
P.L. 265.01-b(1)
CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE
P.L. 265.01(1)
CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE
P.L. 265.01(1)


SCHEDULED ARRAIGNMENT DATE:

ARRAIGNMENT PART:

OTHER ASSOCIATED INDICTMENTS:

DATE COMPLETED: APRIL 29, 2015

ADA: DIENER, TARA LYNN

BUREAU: NARCOTICS BUREAU

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

-against-

IND NO.
CASE NO.  2015BX017033

SECUNDA GUMBS,

Defendant.

---------------------------------------------------------------X

**BE IT REMEMBERED**, that I, **ROBERT T. JOHNSON**, DISTRICT
ATTORNEY of the County of Bronx, by this Information filed pursuant to
Section 200.60 of the Criminal Procedure Law, hereby accuse defendant,
SECUNDA GUMBS, now charged in an indictment with the crime of violation
of section 265.02(1) of the Penal Law as a felony, of having heretofore been
convicted of a crime, as hereinafter set forth:

Heretofore, to wit, on or about the 26th day of January, 2015 in the
County of New York in the State of New York, the said defendant, was in due
form of law convicted of a crime, to wit, Criminal Sale of Marihuana in the
Fourth Degree, Penal Law Section 221.40.

ROBERT T. JOHNSON
District Attorney
Bronx County

## OFFICE OF THE DISTRICT ATTORNEY, BRONX COUNTY
## NOTICES & VOLUNTARY DISCLOSURE FORM

PREPARED BY A.D.A.: **Tara Lynn Diener**

Date: **May 5, 2015**

Defendant
**#1: SECUNDA GUMBS a/k/a BEZ**

Docket No.
**#1: 2015BX017033**

Crime Date:
**#1: 04/10/15**

Approximate Time:
**#1:  6:15 a.m.**

Location:
**#1: inside of 1361 College Avenue, Apartment 2H, Bronx County**

      **PLEASE TAKE NOTICE,** pursuant to Section 710.30 of the Criminal Procedure Law, that during the trial of the indictment herein the People intend to offer evidence of a statement(s) made by the defendant, SECUNDA GUMBS a/k/a BEZ, to a public servant, PO Thomas Adams, shield #001483, 44th Precinct, on 04/10/15 at approximately  6:05 a.m., at inside of 1361 College Avenue, Apartment 2H, the substance of which was THERE ARE TWO GUNS IN THE CLOSET AND THE OTHER STUFF IS IN THE KITCHEN. , which statement was Oral.

      **PLEASE TAKE NOTICE,** pursuant to Section 710.30 of the Criminal Procedure Law, that during the trial of the indictment herein the People intend to offer evidence of a statement(s) made by the defendant, SECUNDA GUMBS a/k/a BEZ, to a public servant, PO Anthony Assent, shield #00306, 44th Precinct, on 04/10/15 at approximately 6:00 p.m., at inside of the 44th Precinct, the substance of which was HOW MUCH MONEY DID YOU GUYS GET?  YOU GOT IT ALL. , which statement was Oral.

      **PLEASE TAKE NOTICE,** pursuant to Section 250.20 of the Criminal Procedure Law, that if a defendant charged in the indictment herein intends to offer a trial defense that at the time of the commission of a crime charged he was at some place or places other than the scene of such crime and to call witnesses in support of such defense, the District Attorney demands that, within eight days of service hereof, such defendant serve upon the District Attorney, and file with the court, a ANotice of Alibi,@ reciting: (a) the place or places where such defendant claims to have been at the time in question, and (b) the names, the residential addresses, the places of employment and the addresses thereof of every such alibi witness upon whom such defendant intends to rely.

      **PLEASE TAKE NOTICE,** pursuant to Section 240.30 of the Criminal Procedure Law, that the District Attorney demands that each defendant charged in the indictment disclose and make available for inspection, photographing, copying or testing, subject to constitutional limitations, (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of, such defendant, if the defendant intends to introduce such report or document at trial, or if such defendant has filed a notice of intent to proffer psychiatric evidence and such report or document relates thereto, or if such report or document was made by a person, other than defendant, whom such defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape or other electronic recording which such defendant intends to introduce at trial.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECUNDA GUMBS,

                              Petitioner,

      - against -

TINA M. STANFORD, NEW YORK
STATE BOARD OF PAROLE,

                              Respondent.

22-CV-04659-VEC-GWG

## MEMORANDUM OF LAW IN OPPOSITION
## TO PETITION FOR A WRIT OF HABEAS CORPUS

**DARCEL D. CLARK**
District Attorney
Bronx County
*Attorney for the Respondent*
198 East 161st Street
Bronx, New York 10451
718-838-7610
Whitemat@bronxda.nyc.gov

DAVID M. COHN
MATTHEW B. WHITE
Assistant District Attorneys
*Of Counsel*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES.........................................................................iii

PRELIMINARY STATEMENT.....................................................................1

INTRODUCTION.........................................................................................2

THE RELEVANT RECORD..........................................................................4

PRETRIAL AND TRIAL PROCEEDINGS...................................................4

THE DIRECT APPEAL................................................................................13

POINT..........................................................................................................16

     THE STATE COURTS REASONABLY DETERMINED THAT, BY HIS CONDUCT AT TRIAL, PETITIONER OPENED THE DOOR TO ADMISSION OF HIS PRE-*MIRANDA* STATEMENT.

A.  Standard of Review.............................................................................18

B.  The Ruling Did Not Violate Clearly Established Supreme Court Precedent....20

C.  Any Error Was Harmless......................................................................27

CONCLUSION ............................................................................................................. 31

<u>TABLE OF AUTHORITIES</u>

**CASES**

*Calderon v. Keane*, 115 F. Appx 455 (2d Cir. 2004). ..............................................27
*Davis v. Ayala*, 576 U.S. 257, 269 (2015) ..............................................30
*Esposito v Warden*, 818 F. Appx. 962 (11th Cir. 2020) ..............................................30
*Estelle v. McGuire*, 502 U.S. 62 (1991) ..............................................27
*Green v. Miller*, 483 U.S. 756 (1987) ..............................................26
*Harrington v Richter*, 562 U.S. 86, 102 (2011) ..............................................19-20
*Harris v. New York*, 401 U.S. 222 (1971) ..............................20-21, 24, 27
*Hemphill v. New York*, 142 S.Ct. 681 (2022) ..............................................15, 25
*Hendrickson v Norris*, 224 F.3d 748 (8th Cir. 2000) ..............................................30
*James v. Illinois*, 493 U.S. 307 (1990) ..............................................24
*Lockyer v. Andrade*, 538 U.S. 63 (2003) ..............................................19
*Michigan v. Tucker*, 417 U. S. 433 (1974) ..............................................24
*New York v. Quarles*, 467 U.S. 649 (1984) ..............................................24
*Oregon v. Hass*, 420 U.S. 714 (1975) ..............................................17, 21, 27
*Pennsylvania v. Muniz*, 496 U.S. 582 (1990) ..............................................23
*People v. Coley*, 129 AD3d 1327 (3d Dept. 2015) ..............................................21
*People v. Gumbs*, 195 A.D.3d 450 (1st Dept. 2021)..............................4, 15, 28, 30
*People v. Gumbs*, 37 N.Y.3d 1059 (2021) ..............................................4, 15
*People v. Gumbs*, 37 N.Y.3d 992 (2021) ..............................................4, 15
*People v. Gumbs*, 38 N.Y.3d 1033 (2022) ..............................................4, 15
*People v. Washington*, 26 AD3d 222, 222 (1st Dept. 2006) ..............................................27
*Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ..............................................18
*South Dakota v. Neville*, 459 U.S. 553 (1983) ..............................................23
*United States v. Douglas*, 525 F.3d 225 (2d Cir. 2008)..............................................28
*United States v. Hallock*, 454 F. Appx. 545 (9th Cir. 2011)..............................................21
*United States v. Havens*, 446 U.S. 620 (1980) ..............................................24
*United States v. Lopez-Medina*, 596 F.3d 716 (10th Cir. 2010) ..............................................23
*United States v. Ouedraogo*, 824 F. Appx. 714 (11th Cir. 2020) ..............................................21
*United States v. Seideman*, 485 F. Appx. 190 (9th Cir. 2012)..............................................21-22
*United States v. Villegas*, 655 F.3d 662 (7th Cir. 2011) ..............................................21
*Walder v. United States*, 347 U.S. 62 (1954) ..............................................20, 26
*Williams v. Taylor*, 529 U.S. 362, 405 (2000)..............................................18, 23
*Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011) ..............................................30
*Woods v. Donald*, 575 U.S. 312, 316 (2015) ..............................................19
*Woods v. Etherton*, 578 U.S. 113 (2016) ..............................................10

STATUTES

28 U.S.C. § 2253(c)(1)(a)...................................................................................31
28 U.S.C. § 2254(d) ...........................................................................18, 23, 30
28 U.S.C. § 2254(e)(1)......................................................................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECUNDA GUMBS,

                    Petitioner,

  - against -

TINA M. STANFORD, NEW YORK
STATE BOARD OF PAROLE,

                  Respondent.

22CV04659-VEC-GWG

# MEMORANDUM OF LAW IN OPPOSITION
# TO PETITION FOR A WRIT OF HABEAS CORPUS

### PRELIMINARY STATEMENT

Petitioner Secunda Gumbs seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 in connection with a judgment of the Supreme Court, Bronx County (Best, J.),

entered June 15, 2017, convicting him, after a jury trial, of Criminal Possession of a

Weapon in the Second Degree (Penal Law § 265.03[3]) (two counts). By that judgment,

petitioner was sentenced to concurrent determinate terms of five years of prison to be

followed by five years of post-release supervision. Petitioner has completed his

sentence, as his post-release supervision expired on June 8, 2022

(https://nysdoccslookup.doccs.ny.gov/).

<u>INTRODUCTION</u>

On April 10, 2015, while executing a search warrant, the police found two loaded firearms, including an assault rifle, in petitioner's bedroom closet.  When the police arrived at petitioner's apartment, they found petitioner present with two other people. The police asked petitioner whether there was anything dangerous in the apartment, and petitioner replied that the guns were in the bedroom closet. Inside that closet, which contained men's clothing that appeared to be petitioner's size, the police found two firearms and ammunition: a Smith and Wesson .357 caliber revolver loaded with six rounds of ammunition, located in a small black bag, and a Hi-Point 9-millimeter assault rifle, located in a black duffle bag, along with a magazine containing several rounds of ammunition. A rifle sling was also recovered. Additional ammunition was found inside each bag, and another box of ammunition was found in the closet. In total, 73 rounds of ammunition were recovered, as well as a bulletproof vest. The police also recovered $6,488 in cash from the apartment, along with 136 bags of marijuana weighing several pounds, and drug paraphernalia from the kitchen (three scales and 900 Ziploc bags). The police arrested petitioner.  During the fingerprinting process, petitioner asked a police officer how much money had been recovered. When the officer answered, petitioner replied, "that's all of it, you got all of it."

By indictment 1334/2015, a Bronx County Grand Jury charged petitioner with Second-degree Criminal Possession of a Weapon (Penal Law § 265.03[3]) (two counts) and related lesser weapons charges.  Petitioner initially entered into a cooperation

agreement and pled guilty to Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) with the possibility, upon fulfilling the terms of the agreement, of withdrawing that plea and re-pleading to a lesser charge (*see* T-12/04/15).   After a proffer session, petitioner stated that he had been "set up." The plea court allowed petitioner to withdraw his plea and assigned petitioner new counsel for further proceedings (*see* T-5-26-16).

On April 24, 2017, the parties appeared before the Honorable Miriam Best for a suppression hearing (H.1).   The court suppressed petitioner's statement that the guns were in the closet, finding that petitioner had made the statement in response to custodial interrogation and had not been *Mirandized* (H.65; VD.2; Decision and Order, filed June 16, 2017).   The court found petitioner's statement about the money admissible.

On May 10, 2017, petitioner proceeded to a jury trial before Justice Best. On May 16, 2017, the jury convicted petitioner of Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) (two counts). On June 15, 2017, the court sentenced petitioner as described above.   Petitioner appealed to the New York Appellate Division, First Department, raising various claims.   Pertinent here, petitioner argued that the trial court had improperly ruled that, at trial, he opened the door to the admission of his un-*Mirandized* statement.   The Appellate Division, First Department, unanimously affirmed.   The Appellate Division held that the court's opening the door ruling was an appropriate exercise of discretion and that in any event, any error was

harmless. *People v. Gumbs*, 195 A.D.3d 450 (1st Dept. 2021).   On August 24, 2021, The

Court of Appeals (Rivera, J.) denied petitioner's application for leave to appeal. *People v.*

*Gumbs*, 37 N.Y.3d 992 (2021); *People v. Gumbs*, 37 N.Y.3d 1059 (2021) (on

reconsideration); *People v. Gumbs*, 38 N.Y.3d 1033 (2022) (on renewal).

In the instant petition for a writ of habeas corpus, dated June 3, 2022, petitioner

argues that the trial court's opening-the-door ruling violated his Fifth Amendment

rights.

## THE RELEVANT RECORD[1]

## PRETRIAL AND TRIAL PROCEEDINGS

During *voir dire*, defense counsel repeatedly remarked that petitioner lacked

knowledge that the guns were present (e.g., VD.349, 362, 367). The People argued this

opened the door to the admission of statements that petitioner had made during a

proffer session (VD.817-24).   The court denied that application, citing an agreement

that the People would use the proffer statements only if petitioner presented testimony

or evidence inconsistent with his proffer statements (VD.843-45; *see* T.49-55,62-64,72-

76).   However, regarding petitioner's un-*Mirandized* statement at the apartment, which

had been suppressed, the court warned defense counsel, "[I]f you open the door going

---

[1] This section briefly sets forth the facts relevant to the sole claim raised in the habeas corpus
petition. For a fuller recitation of the facts, please see Respondent's Appellate Division Brief,
contained within Petitioner's Exhibit B.

forward arguing to this jury or offering evidence that the [petitioner] did not know that the guns were in the closet, you opened the door to that statement" (T.64-65, 71-72).

At trial, Detective Thomas Adams testified that, when the police executed the search warrant at petitioner's apartment on April 10, 2015, the emergency services "A team" entered first, secured the apartment, and handcuffed the occupants. Detective Adams and Sergeant Clark then entered the one-bedroom apartment (Adams:T.15-16, 22-30, 98-104). Adams observed a man sitting on the living room couch bed; under the couch was a suitcase containing male clothes. Adams saw a woman in the bedroom, who was wearing only a white shirt (there were no feminine products in the bathroom). The man and the woman were handcuffed (Adams:T.23-30,98-101;Exh.2,3). Petitioner, who was also handcuffed, was standing in the hallway, in the threshold of the bedroom door (Adams:T.28,104).

From the bedroom, the police recovered large sums of money from a dresser and from underneath a puzzle on the windowsill (Adams:T.30-33;Exh.5,6). The police also recovered money from a safe located inside the bedroom closet (Adams:T.43-44). That closet contained men's clothing (appearing to be petitioner's size) folded neatly and hung (Adams:T.44-46;Exh.9).

Also inside the bedroom closet were two firearms and ammunition: a Smith and Wesson .357 caliber revolver, located in a small black bag, loaded with six rounds of ammunition, and a Hi-Point 9-millimeter assault rifle, located in a black duffel bag, with a magazine, not inserted into the rifle, but loaded with rounds of ammunition. A rifle

sling was also recovered.  Ammunition was found inside each bag, and an additional box of ammunition was found in the closet (Adams:T.34-43,78, 85-97; *see* Mottershead: T.171-203; Exh.7,8,13, 17).  In total, 73 rounds of ammunition were recovered (Adams:T.82). The police recovered additional money from the kitchen.  The money totaled $6,488 (Adams:T.46-47;Exh.16).

On cross-examination, Adams testified that the other two individuals in the apartment were brought to the police station, but not arrested (Adams:T.107-8). Defense counsel elicited from Adams that neither petitioner nor the other two individuals were carrying contraband, nor had Adams seen petitioner touch the guns, ammunition, or money (Adams:T.104-05,108). Counsel elicited further that no effort was made to obtain DNA from the evidence in the apartment, nor was the contraband evaluated for latent fingerprints (Adams:T.105-07).  Counsel then asked whether the two other occupants of the apartment were arrested, and Adams replied, that their arrests were "voided" (T.Adams:106-07).

The court ruled that by eliciting the fact that the arrests of the other two individuals were voided, without more, defense counsel had opened the door to testimony about why this occurred. The court stated that "the questioning about the fact that only one person was arrested, when three people were in the . . . [apartment] with the guns, does suggest immediately the question, 'Why not?' . . . . [A]nd you certainly may not argue that they should have arrested everybody or they treated him

differently for some reason, when we know the answer . . . is, well, he . . . told them where the guns were" (T.112-13).

The court held a hearing, outside the presence of the jury, and ruled that petitioner's statement to the police had been voluntary (T.131-57). Adams then testified on redirect that he did not arrest the other two individuals because, while at the apartment, petitioner said the firearms were in the bedroom closet (Adams:T.162-65). During cross-examination, defense counsel elicited that petitioner's statement had not been reduced to writing or recorded (Adams:T.163-65).

In addition, Police Officer Anthony Assent testified that he fingerprinted petitioner post-arrest. While Assent was setting up the fingerprint machine, petitioner asked how much money was recovered. Assent answered, and petitioner said, in sum and substance, that's all of it, you got all of it (Assent:T.124-26).

Petitioner testified in his own defense.[2] Petitioner testified that he had two children, whom he helped support. He previously worked as security guard, as a cab driver, and in construction (Gumbs:T.240-43). Counsel asked, "as an adult you generally supported yourself through legal means over the years?" Petitioner replied,

---

[2] Although petitioner repeatedly claims the court's ruling forced him to testify (*see eg* Petition ¶ 25), it appears petitioner chose to testify against counsel's advice. Prior to the defense case, counsel stated: "Mr. Gumbs will testify during the course of the trial. He's come to that conclusion. It's his decision. I'm bound by what he wants to do and, as his attorney, I am advising the Court and the People that Mr. Gumbs will testify." (T.210). The court ensured that defendant understood the implications of decision to testify and still wished to do so. (T.231-33).

"Yes, sir, correct." (Gumbs:T.243). Petitioner admitted that he had been convicted of three prior crimes (Gumbs:T.253).

Petitioner admitted that he lived in the apartment and that he was the sole tenant. He claimed that others had keys to his apartment, including, among others, Koden Turner (the man on the living-room couch) and Vanessa Callahan (petitioner's ex-girlfriend, the woman in the bedroom) (Gumbs:T.244-46,296,280,282).

Petitioner testified the bedroom was his, and most items in the bedroom closet were his (Gumbs:T.270-73;Exh.8). Petitioner said he did not know the last time he looked in the bedroom closet prior to execution of the search warrant and did not use it frequently (Gumbs:T.246-47, 270, 304-5). When asked if he ever let Turner or Callahan use his closet without his knowledge, petitioner replied, "not to my knowledge" (Gumbs:T.283). Petitioner confirmed the bedroom closet was his, and said he did not see Callahan, or anyone else, place either of the black bags, which contained the guns, in his closet (Gumbs:T.282-83).

Still, petitioner insisted that he had never seen the Adidas bag or black gym bag, that neither bag was his, and that he had no knowledge of their contents. Petitioner averred that he did not knowingly possess either firearm, that he had never touched either firearm, and that he was not aware of any ammunition in the apartment (Gumbs:T.249-52, 269-74, 290). During cross-examination, petitioner said everything in the apartment was his except for the two guns (Gumbs:T.259, 295-6).

Petitioner testified further that he never told Detective Adams, Sergeant Clark, or anyone else that the guns were in the closet, never made any statement that he was aware of the existence of the guns, never was asked to give a written statement, and was never videotaped (Gumbs:T.252-53).  The court ruled that this testimony opened the door to questioning about petitioner's proffer statements, in which petitioner had admitted to knowledge of the guns (T.260-61, 321-23).  During cross-examination, when the prosecutor asked petitioner about the proffer sessions, petitioner denied that he had talked to prosecutors about this case or where he got the guns (Gumbs:T.300).

Petitioner admitted that the recovered money was his (except for any that may have been in the bags with the weapons), and claimed that he had obtained the money from working, playing the lottery, and illegal sports gambling (Gumbs:T.259-60).

The court ruled that this testimony, along with defendant's earlier statement that he supported himself through legal means, opened the door to cross-examination about defendant's prior marijuana sale convictions.  The court added that defendant's testimony also opened the door for the People to ask defendant whether he had been supporting himself by illegal means, because defense counsel's question "put an inaccurate picture before the jury" (T.263-69).

During cross-examination, petitioner denied there was money in the kitchen or bedroom closet safe (but admitted the safe was his) (Gumbs:T.284-85;Exh.9).  When asked by the prosecutor about other means of income, petitioner stated he had "a few bags of marijuana," about three bags, in his bedroom because he sold marijuana as a

"side hustle." Petitioner said he did not recall having three scales in the apartment, nor did he recall the number of Ziploc bags he had in the apartment (Gumbs:T.286-90). Petitioner admitted that on January 26, 2015, and March 13, 2014, he had been convicted of Criminal Sale of Marijuana (Gumbs:T.290-91).

Regarding his relationship with Callahan, petitioner testified they met in November 2014 and began a romantic relationship that deteriorated and became hostile. Petitioner said Callahan was mad on February 15, 2015, because she believed petitioner gave her a sexually-transmitted disease. She became aggressive, ran out of the apartment, and threatened to break his car windows and slash his tires (Gumbs:T.253-55). Petitioner added that, about two or three weeks before execution of the search warrant, Callahan "made a scene" in petitioner's apartment, yelling at petitioner for giving her herpes, while Shontay James (the mother of petitioner's son) was present (Gumbs:T.255). After that, petitioner said he was "trying to work out the matter, let her know [he] was sorry, and she was in a fairly good mood" (Gumbs:T.259).

The court ruled that this testimony opened the door to cross-examination about his May 3, 2016, conviction of Criminal Obstruction of Breathing for choking Callahan (T.262-65). During cross-examination, petitioner admitted that his relationship with Callahan was hostile and that, on December 23, 2015, he choked Callahan because he found out that she was the confidential informant for the search warrant (Gumbs:T.278-79, 298). Subsequently, petitioner retreated from that testimony, stating, "that wasn't . . . the reason why we got into the altercation. The reason we got into the

altercation was because she wanted to stop me from going to see my daughter and my daughter's mother" (Gumbs:T.298-99). During redirect, however, petitioner again said the December 23, 2015, criminal obstruction of breathing incident occurred after he found out that Callahan was the confidential informant, but that a *subsequent* incident with Callahan after petitioner was released from jail was about his daughter (Gumbs:T.302-04). During re-cross, petitioner changed his testimony again, saying that he only "brought up the CI part to bring it to the forefront," but the motivation for obstructing Callahan's breathing was not because he believed she was the confidential informant (T.305-06).

The court ruled that defendant's testimony had given a misleading impression regarding the total quantity and location of the marijuana found in the apartment, and thus the People were entitled to correct the record. The court added that any evidence admitted in rebuttal would be for the limited purpose of assessing defendant's credibility (T.310-15,330). The court permitted the People to introduce a photograph of the recovered drugs and drug paraphernalia (T.314-18,327-30). The court also ruled that evidence regarding the proffer sessions would be permitted on rebuttal, because defendant's testimony had opened the door (T.333-37).

On rebuttal, Detective Adams testified that he recovered 136 bags of marijuana, weighing several pounds, from the apartment. Adams also recovered paraphernalia from the kitchen (three scales and 900 Ziploc bags) (Adams:T.338-43).

Adams testified further that, on June 9, 2015, petitioner entered into a proffer/cooperation agreement. During the proffer sessions, petitioner admitted that both guns were his and that he stored them in the closet. He identified the man on the couch (Turner) as a friend who had just been staying with him, and the woman (Callahan) as his girlfriend (Adams:T.347). Assistant District Attorney Tara Lynn Diener also testified that petitioner had entered into a proffer agreement and that during the sessions, petitioner admitted to possessing the two firearms found in the apartment (Diener:T.357-60;Exh.20).

After the court granted petitioner permission to present a surrebuttal case, petitioner testified that he had never told Adams or Diener that the weapons were his (Gumbs:T.390-91).

At the close of the evidence, the court instructed the jury that petitioner's statement in the apartment regarding the guns' whereabouts may be considered only "for the limited purpose of explaining why the police acted the way they did. If you find as a fact that [petitioner] made this statement, you may also consider whether that statement is consistent or inconsistent with his testimony at this trial. If you find that [petitioner] has made such inconsistent statements, you may consider whether and to what extent they affect the truthfulness and accuracy of his testimony here at this trial" (T.492-93).

Additionally, the court instructed the jury that the evidence of petitioner's illegal sports gambling and marijuana sales could be considered "on the question of

credibility" and "for no other purpose," adding that it "must not be considered . . . for the purpose of proving that the [petitioner] had a propensity or predisposition to commit the crimes charged in this case" (T.491). Similarly, the court told the jury that the evidence of petitioner's prior convictions could not be considered as evidence of "a propensity or predisposition to commit the crimes charged in this case"; instead, "it was offered as evidence for your consideration only on the question of his credibility[] . . . and for no other purpose" (T: 515). The court added that petitioner's proffer statements could be considered only to determine whether petitioner had made "inconsistent statements" that "affect the truthfulness or accuracy of his testimony here at the trial" (T.494). And, the court told the jury that petitioner's statement at the precinct about the money, "you got it all," could be considered under the *Miranda* rule only if it was "spontaneously volunteered" (T.493-494).

The jury found petitioner guilty of two counts of Criminal Possession of a Weapon in the Second Degree.

<u>THE DIRECT APPEAL</u>

On appeal to the Appellate Division, First Department, petitioner argued, as relevant here, that the court's opening the door rulings, including its ruling that petitioner had opened the door to the admission of his un-*Mirandized* statement, were improper. The Appellate Division unanimously affirmed, stating:

> We find that all of the court's rulings based on the theory of opening the door were provident exercises of discretion under the particular circumstances of this case (*see generally People v. Massie*, 2 N.Y.3d 179, 184,

777 N.Y.S.2d 794, 809 N.E.2d 1102 [2004]; *People v. Fardan,* 82 N.Y.2d 638, 646, 607 N.Y.S.2d 220, 628 N.E.2d 41 [1993]). To the extent that petitioner argues that the evidence admitted on this theory was unduly prejudicial, we conclude that the court's limiting instructions, which the jury presumably followed, minimized any prejudice (*see People v. Davis*, 58 N.Y.2d 1102, 462 N.Y.S.2d 816, 449 N.E.2d 710 [1983]).

First, petitioner elicited that although the police arrested him and the other two persons who were in his apartment at the time a search warrant was executed, the arrests of the other two were voided. The court providently exercised its discretion in finding that this testimony opened the door to petitioner's suppressed statement to the police in the apartment as to the location of the two illegal weapons he was charged with possessing (*see People v. O'Garra*, 16 A.D.3d 251, 252, 791 N.Y.S.2d 538 [1st Dept. 2005], *lv denied* 5 NY3d 766, 801 N.Y.S.2d 261, 834 N.E.2d 1271 [2005], *cert denied* 546 U.S. 1005, 126 S.Ct. 627, 163 L.Ed.2d 509 [2005]; *see also People v. Reid*, 19 N.Y.3d 382, 387, 948 N.Y.S.2d 223, 971 N.E.2d 353 [2012]; *People v. Smith*, 270 A.D.2d 132, 706 N.Y.S.2d 308 [1st Dept. 2000]). The testimony elicited by petitioner suggested that the police had no apparent reason for releasing the other two people and singling out petitioner. . . .

Next, petitioner's testimony that he generally supported himself by "legal means," such as working as a security guard and a licensed cab driver, opened the door to evidence that he sold marijuana (*see People v. DePalo*, 187 A.D.3d 649, 650, 135 N.Y.S.3d 31 [1st Dept. 2020], *lv denied* 36 N.Y.3d 1096, 144 N.Y.S.3d 151, 167 N.E.3d 1286 [2021]). His subsequent testimony that there were 3 bags of marijuana in his apartment, belonging to himself and someone else, further opened the door to evidence that police found 136 bags of marijuana, 900 empty ziplock bags, and 3 scales in the apartment (*see People v. Rivera*, 251 A.D.2d 142, 142, 674 N.Y.S.2d 317 [1st Dept. 1998], *lv denied* 92 N.Y.2d 985, 683 N.Y.S.2d 766, 706 N.E.2d 754 [1998]).

. . . .

In any event, we find that any error in the above-discussed matters was harmless in light of the overwhelming evidence of guilt (*see People v. Crimmins,* 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 [1975]). The evidence included, among other things, an undisputedly admissible statement, resulting from a proffer agreement, that amounted to a full confession.

*People v. Gumbs,* 195 A.D.3d 450, 450-51 (1st Dept. 2021).

On August 24, 2021, the Honorable Jenny Rivera denied petitioner leave to appeal to the New York Court of Appeals. *People v. Gumbs*, 37 N.Y.3d 992 (2021).  On October 25, 2021, Judge Rivera denied petitioner's application for reconsideration of that order but granted him leave to renew within 60 days after the Supreme Court rendered a decision in *Hemphill v. New York*.  *People v. Gumbs*, 37 N.Y.3d 1059 (2021).[3]  On May 6, 2022, Judge Rivera denied petitioner's renewed leave application. *People v. Gumbs*, 38 N.Y.3d 1033 (2022).

---

[3] The Supreme Court rendered a decision in *Hemphill* on January 20, 2022. *See Hemphill v. New York*, 142 S.Ct. 681 (2022).

<u>POINT</u>

THE STATE COURTS REASONABLY DETERMINED THAT, BY
HIS CONDUCT AT TRIAL, PETITIONER OPENED THE DOOR
TO ADMISSION OF HIS PRE-*MIRANDA* STATEMENT.

Petitioner obtained a number of favorable evidentiary rulings prior to trial,
precluding the use of his un-*Mirandized* statement that the guns were in the closet,
severely limiting any cross-examination about his criminal past, and preventing the jury
from hearing that drugs and drug packaging materials had been recovered from his
apartment. The People were also precluded from introducing evidence of petitioner's
initial cooperation and that he admitted during a proffer session that the guns belonged
to him.

At trial, petitioner tried to take advantage of those rulings to paint a false
narrative for the jury. When cross-examining Detective Adams, petitioner raised
questions about why the police had released the two other people found in the
apartment, when in truth the answer was clear: Petitioner had admitted that the guns
were his. Petitioner adopted this strategy despite the court's pretrial warning that, if he
presented evidence indicating that he did not know the guns were in the closet, he
would open the door to the admission of his un-*Mirandized* statement. Then, when
petitioner testified in his own defense, he opened the door even wider, claiming that he
had never seen the guns and had no idea they were in the closet, denying that he had
ever admitted that he knew the guns were there, asserting that he supported himself
through lawful means, and describing his ex-girlfriend, Callahan, as the aggressor in

their relationship.  The court ruled that this testimony opened the door to cross-examination about his prior convictions for drug dealing, the presence of drugs and drug paraphernalia in the apartment, his proffer statements admitting possession of the guns, and his prior conviction for choking Callahan.  And, because petitioner denied making the proffer statements and understated the quantity of drugs recovered from the apartment, the court permitted the People to address those matters on their rebuttal case.

In seeking habeas corpus relief, petitioner does not deny that his trial testimony – which directly contradicted his prior, un-*Mirandized* statement as well as the other evidence described above – opened the door to *all* of the evidence that the court ultimately admitted.  Nor could he, because generally "the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Oregon v. Hass*, 420 U.S. 714, 721-22 (1975) (internal quotation marks omitted).

Instead, petitioner argues that the court erred by ruling that his cross-examination of Detective Adams, standing alone, opened the door to admission of the un-*Mirandized* statement.  And, he asserts, this allegedly erroneous initial ruling *compelled* him to testify and thereby caused him to give the blatantly false account described above, which undisputedly opened the door to the challenged evidence (Pet. Mem. of Law at 13).  But as explained below, the court's initial ruling was appropriate and certainly did not violate clearly established Supreme Court precedent.  Moreover,

nothing in the court's ruling compelled petitioner to testify, and thus the court's initial ruling was, at most, harmless, as petitioner's testimony denying that he knew about the guns plainly opened the door to evidence of his prior statement.   Finally, as the Appellate Division properly ruled in the alternative, even putting petitioner's un-*Mirandized* statement aside, the remaining evidence overwhelmingly proved his guilt.

## A.  Standard of Review

"The writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice system." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (internal quotation marks omitted). Federal habeas relief is not appropriate with respect to a claim "adjudicated on the merits" in state court, unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state court decision is "contrary to" federal law when the state court applies a "conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule . . . but unreasonably

applies it to the facts" of a particular case or it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Of course, "[a]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). For this reason, a petitioner can obtain a writ only if the state court decision was not only erroneous or incorrect in its application of federal law, but also that application was unreasonable. *Id.* at 411.

In fact, the standard is not even whether the state court committed "clear error," as that "fails to give proper deference to state courts." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Instead, federal habeas corpus review is intended to "guard against extreme malfunctions in the state criminal justice systems," *Harrington v Richter*, 562 U.S. 86, 102 (2011) (internal quotations omitted), and extends only to decisions "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (internal quotations omitted).

Simply put, federal courts must presume that "state courts know and follow the law," and federal judges may overturn a state criminal conviction on collateral review "only when there could be no reasonable dispute" that the state court decision was "wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotations omitted). Beyond that, "Federal habeas review of state convictions frustrates both the States'

sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Harrington*, 562 U.S. at 103 (internal quotations omitted). Indeed, federal habeas review "disturbs the state's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* (internal quotations omitted).

Finally, in reviewing state court factual determinations, the federal court must apply a presumption of correctness, unless the petitioner is able to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B. The state court's evidentiary ruling did not violate clearly established Supreme Court precedent.

A criminal defendant may, by his litigation strategy, open the door to evidence of a suppressed confession (so long as it was not involuntary) or to physical evidence that was obtained in an illegal search. *See Harris v. New York*, 401 U.S. 222 (1971); *Walder v. United States*, 347 U.S. 62 (1954). As Justice Frankfurter, writing for the Court, explained in *Walder*:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine would be a perversion of the Fourth Amendment.

*Walder*, 347 U.S. at 65.

Petitioner concedes, as he must, that if a defendant testifies at trial in a manner inconsistent with a suppressed statement, he may be impeached with the prior statement (Memorandum at 17). *See, e.g., Hass, supra,* 420 U.S. at 721-22; *Harris,* 401 U.S. at 225-26. Further, and contrary to petitioner's argument (Memorandum at 21-28), the "opening the door principle" is not limited to impeachment of a defendant's trial testimony. Rather – and pertinent here – a defendant's misleading cross-examination of a prosecution witnesses can open the door to the introduction of a suppressed statement on the prosecutor's case-in-chief. This principle has been recognized by New York appellate courts, *see People v. Coley,* 129 AD3d 1327, 1329-30 (3d Dept. 2015), as well as by federal circuit courts, *see, e.g., United States v. Ouedraogo,* 824 F. Appx. 714, 722-23 (11th Cir. 2020) (defense counsel's cross-examination opened the door to testimony about defendant's un-*Mirandized* statements); *United States v. Seideman,* 485 F. Appx. 190, 193 (9th Cir. 2012) (defense counsel's "questions suggesting that law enforcement failed to pursue other suspects could open the door to testimony about [defendant's] suppressed confession"); *United States v. Hallock,* 454 F. Appx. 545, 547 (9th Cir. 2011) (defense counsel asked questions that law enforcement agent "could not truthfully answer without referring to [defendant's] suppressed statements"); *accord United States v. Villegas,* 655 F.3d 662, 673 (7th Cir. 2011) (defense counsel's cross-examination of special agent, inquiring as to what he knew about defendant in early stages of investigation, opened door to government asking questions related to evidence

previously "left out" of the trial, because the "jury was left with an incomplete picture of the course of the early investigation").

Here, the trial court correctly ruled that defense counsel's cross-examination of Detective Adams opened the door to petitioner's suppressed statement. As the state courts found, defense counsel created a misleading impression at trial by questioning Adams about whether the two other persons found in the apartment were released. The obvious goal of counsel's questioning was to impugn the integrity of the police investigation and raise an inference that the police had vindictively targeted petitioner for arrest and prosecution while allowing his equally guilty cohorts to walk free. In truth, however, the police arrested petitioner – and released the two other individuals – for a simple reason: not only did the apartment belong to petitioner, but he told the police where the guns were located, indicating that the firearms belonged to him. This case, therefore, is indistinguishable from *Seideman*, where defense counsel would have opened the door to a suppressed confession by questioning why law enforcement did not "pursue other suspects." 485 F. Appx. at 193.

Moreover, the court's ruling should not have come as a surprise. During jury selection, the court warned defense counsel that he would open the door to petitioner's un-*Mirandized* statement if counsel insinuated that petitioner did not know the guns were in the closet (VD.843-45; *see* T.49-55,62-64,72-76). By pursuing a line of inquiry calculated to lay the blame on the other occupants of the apartment – despite the trial court's clear warning – petitioner forfeited any right to suppression of his un-*Mirandized*

statement. *See United States v. Lopez-Medina*, 596 F.3d 716, 731-32 (10th Cir. 2010) (defense counsel opened the door to the admission of testimonial hearsay by ignoring court's warning that a line of questioning would open the door).

In response, petitioner contends that no Supreme Court decision has found that a statement taken in violation of *Miranda* was properly introduced during the prosecution's case-in-chief (Memorandum at 30-31). Petitioner, however, turns the standard of review in a habeas corpus proceeding on its head. It is not incumbent on the state to find a Supreme Court decision that mirrors the ruling of the state courts here. Instead, to obtain federal habeas corpus relief, petitioner must demonstrate that the state court ruling contravened established Supreme Court precedent. 28 U.S.C. §2254(d); *Williams*, 529 U.S. at 405. Because petitioner cannot point to a Supreme Court decision holding that counsel's cross-examination of a prosecution witness *cannot* open the door to evidence of an un-*Mirandized* statement, his habeas corpus claim must be rejected.

Notably, too, Supreme Court precedent refutes petitioner's assertion (Memorandum at 21) that an un-*Mirandized* statement may be admitted only to impeach a defendant's trial testimony. Rather, the Court has recognized multiple exceptions to the exclusionary rule. *See, e.g. Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (responses to "routine booking" questions are exempt from *Miranda*); *Soouth Dakota v. Neville*, 459 U.S. 553, 564 (1983) (a defendant's "choice of refusal [of a blood alcohol test] . . . enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection");

*New York v. Quarles*, 467 U.S. 649, 655-56 (1984), ("there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence"); *Michigan v. Tucker*, 417 U. S. 433, 450–452, n.26 (1974) (the fruits of an un-*Mirandized* statement are admissible). While, to be sure, the Supreme Court has expressly recognized that an un-*Mirandized* statement may be used to impeach a defendant's trial testimony, *see Harris, supra,* 401 U.S. at 225; *United States v. Havens*, 446 U.S. 620, 627 (1980), that is not the *only* exception. Indeed, the Supreme Court has characterized *Miranda* as a prophylactic rule, rather than a true Fifth Amendment right, and its applicability is based on a cost-benefit analysis. *See Vega v. Tekoh*, 142 S.Ct. 2095, 2105-07 (2022).

Petitioner's reliance on *James v. Illinois,* 493 U.S. 307, 313 (1990), is similarly misplaced. In *James*, the Court held only that the door will not be opened to the admission of a suppressed statement simply because an insufficiently "attentive" or even "hostile" defense witness (other than the defendant) makes a stray comment that arguably contradicts the illegally obtained evidence. *Id.* at 315. Here, of course, it was not a stray comment from a defense witness that opened the door; instead, it was a calculated line of questioning pursued by petitioner's own counsel.

In fact, in *James*, the Court made clear that the application of the exclusionary rule rests on a balancing test, observing that it had "carved out exceptions to the exclusionary rule . . . where the introduction of reliable and probative evidence would significantly further the truthseeking function of a criminal trial and the likelihood that

admissibility of such evidence would encourage police misconduct is but a speculative possibility." *James*, 493 U.S. at 311 (internal quotation marks omitted).  The Court added, "*One exception to the rule* permits prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the credibility of the defendant's own testimony." *Id.* at 312 (emphasis added).  The Court thus acknowledged that, contrary to petitioner's argument, other exceptions exist.

Petitioner is also wrong to rely on *Hemphill v. New York*, 142 S Ct. 681 (2022).  In *Hemphill*, the Court ruled that defense counsel's comments in his opening statement did not open the door to the admission of testimonial hearsay – a nontestifying witness's plea allocution – on the People's case-in-chief.  *Id.* at 687-88, 691-93.  The Court explained that the constitutional provision at issue – the Sixth Amendment Confrontation Clause – did not permit "'open-ended exceptions . . . developed by the courts'"; instead, the Confrontation Clause "was 'most naturally read' to admit 'only those exceptions established at the time of the founding.'"  *Id.* at 690 (quoting *Crawford v. Washington*, 541 U.S 36, 54 (2004)).  By contrast, the Court noted that state courts may employ a "balancing test" to permit exceptions to the exclusionary rule, because it is a "prophylactic" rule designed to deter police misconduct rather than a "substantive guarantee." *Hemphill*, 142 S. Ct. at 692 (internal quotation marks omitted).

Here, therefore, because the *Miranda* rule is a prophylactic rule rather than a substantive constitutional guarantee, the state courts properly employed a balancing test in concluding that petitioner opened the door to the admission of his un-*Mirandized*

statement.  Specifically, the state courts were entitled to balance the deterrent value of the *Miranda* rule against the strong interest in ensuring that a litigant does not mislead the jury.  And here, as explained, petitioner's cross-examination of Detective Adams sought to raise questions about why the police released the two other occupants of apartment, when in truth the answer was clear – petitioner had admitted to the police that he knew the guns were in his bedroom closet.  As the state courts concluded, petitioner was not entitled to use the *Miranda* rule as a "shield" and a "sword" to prevent the jury from learning the truth.  *Walder*, 347 U.S. at 65.

Moreover, the trial court's instructions ensured that the jury used the un-*Mirandized* statement for an appropriate purpose.  Contrary to petitioner's assertion, the statement was *not* improperly admitted as substantive evidence of guilt.  (Memorandum at 30, citing *James*, 493 U.S. at 313).  Rather, the statement was admitted for the limited purpose of explaining why police acted the way they did and to assess petitioner's credibility. Specifically, the trial court instructed the jury prior to deliberations:

> With respect to this statement [regarding the guns' whereabouts], if you find as a fact that the petitioner made this statement, you may consider this evidence for the limited purpose of explaining why the police acted the way they did. If you find as a fact that petitioner made this statement, you may also consider whether that statement is consistent or inconsistent with his testimony at this trial. If you find that petitioner has made such inconsistent statements, you may consider whether and to what extent they affect the truthfulness and accuracy of his testimony here at this trial.

(T.492-93).  The jury is normally presumed to follow the court's instructions, *see Green v. Miller*, 483 U.S. 756, 766 n.8 (1987); *People v. Washington*, 26 AD3d 222, 222 (1st Dept.

2006), and there is no reason to believe that the jurors were unable to follow the instruction in this case.

Therefore, the admission of petitioner's un-*Mirandized* statement was proper. It was not contrary to, or an unreasonable application of, Supreme Court precedent. And, because the state court evidentiary ruling did not deprive petitioner of a fair trial, it provides no basis for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991); *accord Calderon v. Keane,* 115 F. Appx 455, 458 (2d Cir. 2004).

C.  Any error in the state trial court's initial, door-opening ruling was harmless.

In any event, any error in the court's ruling was harmless. To begin, even if defense counsel's cross-examination of Detective Adams did not open the door to the admission of the challenged statement, petitioner's subsequent trial testimony swung the door wide open. Petitioner testified that he had never seen the bags that contained the guns, that he did not knowingly possess the firearms, and that he did not know the guns were in his between closet (Gumbs:T.249-52, 269-74, 290). That testimony – which was plainly inconsistent with his statement to the police that the guns were in the closet – undisputedly opened the door to the challenged statement. *See Hass*, 420 U.S. at 721-22; *Harris*, 401 U.S. at 226. Thus, petitioner's un-*Mirandized* statement would have been admitted at trial regardless, and the court's ruling that it was the cross-examination of Adams that opened the door, rather than the testimony of defendant himself, was ultimately inconsequential. Simply put, at the end of the day, the evidence before the jury would have been the same. The fact that the statement was introduced

on the People's direct case, as opposed to being introduced following defendant's testimony, did not have a "substantial and injurious effect" on the verdict. *Fry v. Pliler*, 551 U.S. 112, 121 (2007).

Further, as the Appellate Division observed, petitioner's trial testimony opened the door to cross-examination about his proffer statement, which "amounted to a full confession." *Gumbs*, 195 A.D.3d at 451. Hence, petitioner suffered no prejudice from the admission of his similar statement to the police that the guns were in the closet.

In response, petitioner asserts that that the trial court's opening-the-door ruling compelled him to testify and to tell the lies that resulted in him opening the door not only to admission of the un-*Mirandized* statement but to cross-examination about his proffer statement, the drugs and drug paraphernalia recovered from the apartment, and details of his criminal history that had previously been precluded (Memorandum at 34-36). But contrary to petitioner's argument, nothing in the court's ruling required him to testify, and certainly the court's ruling did not require him to lie on the stand and thereby open the door to a bevy of impeachment material. That decision was defendant's own, voluntary choice, and he must live with the consequences. *See United States v. Douglas*, 525 F.3d 225, 248 (2d Cir. 2008) (any error harmless in light of defendant's testimony).

Indeed, petitioner could have declined to testify and then challenged the court's door-opening ruling on appeal. Because petitioner made a different choice at trial, electing to testify and opening himself up to impeachment, this Court must evaluate

petitioner's claim based on the full trial record and not based on the way that petitioner wishes, in retrospect, that the trial had unfolded.

Notably, too, petitioner's assertion that he was somehow "compelled" to testify is refuted by the fact that he apparently took the stand against counsel's advice. Before petitioner testified, defense counsel made a point of telling the court: "Mr. Gumbs will testify during the course of the trial. He's come to that conclusion. *It's his decision. I'm bound by what he wants to do and, as his attorney, I am advising the Court and the People that Mr. Gumbs will testify.*" (T.210) (emphasis added). The court asked petitioner whether he understood the implications of his decision to testify, and petitioner responded that he did (T.231-33).

This colloquy indicates that petitioner testified against counsel's advice. Instead of matter-of-factly stating that petitioner would testify – as counsel surely would have done if he had wanted petitioner to testify – defense counsel went out of his way to say that he was "bound" by petitioner's decision and that it was what "he wants to do" (T.210). Critically, this colloquy occurred well after the trial court's initial door-opening ruling. Thus, despite the court's ruling that counsel's cross-examination of Adams had opened the door to the un-*Mirandized* statement, counsel still evidently advised petitioner to exercise his Fifth Amendment rights. Petitioner should not now be heard to argue, therefore, that the door-opening ruling compelled him to testify, because even his trial attorney did not believe that to be true.

Finally, the door-opening ruling was harmless for an independent reason: The evidence against petitioner was overwhelming. *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011); *see also Hendrickson v Norris*, 224 F.3d 748, 750 n.3 (8th Cir. 2000) (any error in impeaching witness with inadmissible statement harmless); *Esposito v Warden*, 818 F. Appx. 962, 972 (11th Cir. 2020) (no prejudice given "strong evidence of guilt"), *cert denied*, 141 S.Ct. 2727 (2021). The trial evidence established that two operable, loaded firearms were found in petitioner's bedroom closet, which contained petitioner's clothing. Petitioner was the sole legal tenant of the apartment. Petitioner told the police that they had recovered all of the money – which was found in various locations in the apartment – showing that he exercised dominion and control over the entire premises. The two other occupants, Turner and Callahan, were merely guests: Turner's belongings were in a suitcase under the living room couch, and Callahan had no personal items in the apartment aside from some clothing on the bedroom floor (T.15-304). And, as detailed above, petitioner's trial testimony was thoroughly incredible and was soundly impeached (T.239-304). Thus, the Appellate Division properly ruled that the evidence of petitioner's guilt was "overwhelming" and that the admission of the challenged statement had no effect on the verdict. *Gumbs*, 195 A.D.3d at 451.

Critically, on federal habeas review, the conviction must be upheld unless the state court applied the harmless error rule "in an objectively unreasonable manner." *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (internal quotation marks omitted); *see* 28 U.S.C. § 2254(d). Here, for all the reasons stated above, the Appellate Division's harmless

error determination was not objectively unreasonable.   Accordingly, any purported error did not affect the verdict, and the habeas petition should be denied.

<u>CONCLUSION</u>

The petition for a writ of habeas corpus should be denied. This Court should also decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(a), since petitioner has failed to make a substantial showing of the denial of a constitutional right.

Respectfully submitted,

DARCEL D. CLARK
District Attorney
Bronx County
198 East 161 Street
Bronx, New York 10451
718-838-7610

By: _____
Matthew B. White (MW-1922)
Assistant District Attorney
Attorney for Respondent

DAVID M. COHN
MATTHEW B. WHITE
BETH R. KUBLIN

Assistant District Attorneys
 Of Counsel

August 29, 2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECUNDA GUMBS,

Petitioner,

-against-

TINA M. STANFORD, NEW YORK STATE BOARD
OF PAROLE,

Respondent.

ANSWER IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS
CORPUS

1:22-CV-04659-VEC-GWG

DARCEL D. CLARK
District Attorney
Bronx County
198 East 161 Street
Bronx, New York  10451
(718) 590-2000

Matthew B. White
Assistant District Attorney
Of Counsel