USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/12/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                        :

SECUNDA GUMBS,                    :

                                        :

                        Petitioner,       :             22-CV-4659 (VEC)

                                        :

            -against-                :             OPINION & ORDER

                                        :

TINA M. STANFORD, CHAIRPERSON,    :
NEW YORK STATE BOARD OF PAROLE,    :

                                        :

                        Respondent.     :

                                        :

-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On June 3, 2022, Secunda Gumbs ("Petitioner") filed a Petition for a Writ of Habeas

Corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for possession of a weapon in

the second degree.  *See* Pet. ¶ 5, Dkt. 1.  On April 12, 2023, Magistrate Judge Gorenstein issued

a Report and Recommendation ("R&R") recommending that the Petition be denied.  Dkt. 15.  On

May 24, 2023, Petitioner objected to the R&R ("Obj."), Dkt. 19, and on June 7, 2023,

Respondent responded to Petitioner's Objections ("Resp."), Dkt. 20.[1]  For the following reasons,

the R&R is ADOPTED, and the Petition is DENIED.

---

[1]      Respondent's Response included objections to the R&R.  As set forth in the R&R, pursuant to 28 U.S.C. §
636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties had 14 days to file objections.  R&R at
27.  Respondent inexplicably construed that instruction as applying only to Petitioner and, for the sake of "judicial
economy," *see* Resp. Letter, Dkt. 22, decided to file her objections and responses together in a single document.
Petitioner then, without leave of Court, filed a Reply in support of his Objections and in response to Respondent's
Responses ("Pet. Reply"), Dkt. 21.

       Because the R&R clearly stated that any objection must be filed within 14 days to be considered, R&R at
27, the objections filed with Respondent's Responses were untimely and therefore have not been considered.  And,
because the R&R only contemplated objections and responses — not replies in support of objections — Petitioner's
Reply has also not been considered.

**BACKGROUND**

In April 2015, police executed a search warrant at Petitioner's apartment in the Bronx, New York.  R&R at 1.  When the police arrived, Petitioner was in the apartment with two other individuals who were later determined to be visitors: a male friend and Petitioner's girlfriend. *Id.* at 2.  Petitioner was placed in handcuffs while police conducted the search.  Without giving the warning required by *Miranda v. Arizona*, 384 U.S. 436 (1966), an officer asked Petitioner whether there was anything in the apartment.  *Id.* at 1–2; Pet. ¶ 14.  Petitioner responded that "the guns were in the bedroom closet and everything else was in the kitchen."  R&R at 1–2.  Upon searching the bedroom closet, police found a bag containing a revolver and another bag containing a 9-millimeter rifle.  *Id.* at 2.  In the kitchen, officers found a "large quantity of marijuana" and drug paraphernalia.  *Id.*  They also recovered roughly $6400 in currency from various locations in the apartment.  *Id.*  At the precinct, after being read his *Miranda* warnings, Petitioner told the police that they had found all of the money.  *Id.* at 3 n.3.  Neither of the two visitors who were present in the apartment was charged, and their arrests were "voided."  *Id.* at 2.

Before trial, the New York Supreme Court granted Petitioner's motion to suppress his un-*Mirandized* statement that "the guns were in the bedroom closet and everything else was in the kitchen."  *Id.* at 2.  Because Petitioner was charged only with illegal possession of the guns, the trial court ruled that the marijuana and drug paraphernalia would not be admitted; as for the money, the prosecution could inquire only as to the fact that it was found and the amount recovered, but not the denominations of the bills.  *Id.*  The Court also excluded evidence of Petitioner's past drug-related convictions.  *Id.*  Thus, the admissible evidence included the following: two guns and ammunition seized from the closet in Petitioner's bedroom; testimony that the closet in which the guns were found contained men's clothing that would appear to fit

Petitioner; a large sum of currency recovered from various locations in the apartment; the lease

and the utilities for the apartment were in Petitioner's name; two visitors were at the apartment

during the search (the other male in the apartment had been sleeping on the sofa and there were

no "feminine" products in the bathroom of the apartment); and Petitioner's properly *Mirandized*

statement at the police station that the police "got all of" the money that was in the apartment.

*Id.* at 3.

　　During jury selection and opening arguments, defense counsel indicated that Petitioner

would likely not testify.  *Id.* at 3–4.  At trial, Petitioner's attorney elicited during cross-

examination of a prosecution witness that there was no forensic evidence linking Petitioner to the

guns (specifically, that the guns were never tested for fingerprints) and that the two other

individuals who were in the apartment were neither searched nor charged with any crime.  *Id.* at

3.  Because the cross-examination focused on the fact that the other two people who were in the

apartment had not been charged, the prosecutors argued that the defense had "opened the door"

to the admission of Petitioner's un-*Mirandized* statement.  *Id.* at 3.  The trial court agreed; it

reasoned that the cross-examination "raised a question in everybody's mind" why Petitioner was

the only one arrested.  *Id.*  After concluding that the un-*Mirandized* statement had been

voluntarily given, the trial court permitted the prosecution to elicit that Petitioner told the police

that the firearms were in the bedroom closet.  *Id.*

　　After the prosecution rested, Petitioner decided that he would testify.  *Id.* at 4.  That

decision was against the advice of counsel; additionally, the trial court advised Petitioner that if

he testified it would very likely lead to the admission of other inculpatory evidence (including a

confession given during a proffer session) that would otherwise remain inadmissible.  *See* Tr. at

231–32 (Dkt. 3-1 at 391); Resp. App. Br. at 29 n.26 (Dkt. 3-1 at 113); *see also* R&R at 3–4.

3

Petitioner rejected that advice and, on direct examination, denied having told the police that there were guns in his closet.  R&R at 4; Tr. at 252 (Dkt. 3-1 at 396).  He also denied ownership of the guns, the ammunition, and the bags in which the guns and ammunition were found.  R&R at 4; Tr. at 249–52 (Dkt. 3-1 at 395–96).  Petitioner's denial opened the door to the introduction of his statement during a proffer session in which he acknowledged that he owned the guns.  R&R at 4–5; Tr. at 337, 345–36 (Dkt. 3-1 at 419, 421–22).  And, because Petitioner testified that he supported himself through "legal means," he also opened the door to proof that marijuana and drug paraphernalia were recovered from the apartment and that Petitioner had prior drug convictions.  *See id.*

The jury convicted Petitioner on both counts of criminal possession of a weapon; the court sentenced Petitioner to a five-year term of imprisonment, followed by five years of supervised release.  R&R at 5.[2]  Petitioner appealed his conviction, challenging, *inter alia*, the admission of his un-*Mirandized* statement.  *Id.*  The New York Appellate Division affirmed the conviction, finding that the trial court "providently exercised its discretion" in admitting the un-*Mirandized* statement and that, even if that ruling were error, such error "was harmless in light of the overwhelming evidence of guilt."  *Id.* (quoting *People v. Gumbs*, 195 A.D.3d 450, 450–51 (1st Dep't 2021)).  That evidence of guilt, according to the Appellate Division, included

---

[2]      Although Petitioner was on parole at the time he filed his petition, his parole has since expired.  R&R at 9. His petition for *habeas* is not moot, however, because it is presumed that the collateral consequences of a conviction are sufficient to obviate mootness, even after release from custody.  *See United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999); R&R at 10.

Petitioner's "undisputedly admissible statement, resulting from a proffer agreement, that amounted to a full confession." *Id.*[3]

## DISCUSSION

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1)(C); as to the portions of an R&R to which no party timely objects, the Court may accept those findings provided that "there is no clear error on the face of the record," *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.  An error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed."  *See Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).  When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

The Court need not consider arguments and factual assertions contained in the objections that were not raised initially before the magistrate judge.  *Robinson v. Keane*, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation."); *see also Abu–Nassar v. Elders Futures, Inc.*, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994)

---

[3]  On August 24, 2021, the New York Court of Appeals denied Petitioner leave to appeal.  R&R at 5. Petitioner moved for reconsideration, and, on October 5, 2021, the Court of Appeals denied the motion.  *Id.*  The Court of Appeals did, however, grant leave to renew the motion pending the United States Supreme Court's decision in *Hemphill v. New York*, 142 S. Ct. 681 (2022); Petitioner's renewed request, post-*Hemphill*, was denied on May 6, 2022.  *Id.* at 5–6.

("If the Court were to consider [new arguments in an objection], it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments."). Accordingly, when new arguments or factual assertions are raised for the first time in objections to an R&R, the Court may decline to consider them.

Upon a careful review of Magistrate Judge Gorenstein's R&R, the Court finds no error in its conclusion. First, the Court finds no clear error in Judge Gorenstein's finding, to which no party validly objected,[4] that the trial court violated clearly established United States Supreme Court precedent by allowing the prosecution to introduce Petitioner's un-*Mirandized* statement at

---

[4]     As discussed *supra*, n.1, Respondent raised untimely (and therefore invalid) objections to Judge Gorenstein's finding that the trial court erred when it admitted Petitioner's un-*Mirandized* statement at trial. Resp. at 2–5. But even if Respondent's objections had been timely, they merely regurgitate the arguments previously made to and rejected by the Magistrate Judge. *See id.* at 1 ("[R]espondent renews her argument that, by his trial strategy, [P]etitioner opened [the] door to admission of the un-*Mirandized* statement."). Thus, even if the objections had been timely, the Court would be reviewing that aspect of the R&R only for clear error because Respondent simply reiterated her original arguments. *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also O'Callaghan v. N.Y. Stock Exch.*, 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (collecting cases), *aff'd*, 563 F. App'x 11 (2d Cir. 2014).

trial in its case-in-chief.[5]  *See* R&R at 18.  Because the Appellate Division determined that the

trial court's error was harmless, Petitioner is only entitled to habeas relief if he can show that the

error: (1) had a "substantial and injurious effect or influence" on the jury's verdict, *Brecht v.

Abramson*, 507 U.S. 619, 638 (1993); *and* (2) that, under 28 U.S.C. § 2254(d)(1), the Appellate

Division's harmless-error determination was an "unreasonable application" of clearly established

federal law (here, the harmless-error standard articulated in *Chapman*), or, under § 2254(d)(2),

was based on an unreasonable determination of the facts.  *Brown v. Davenport*, 142 S. Ct. 1510,

1524 (2022).

Petitioner objects to Judge Gorenstein's findings that the Appellate Division's harmless-

error analysis was a reasonable application of federal law and that the trial court's error did not

have a substantial and injurious effect on the jury's verdict.  Obj. at 1–2.

---

[5]      Petitioner argues that, although the R&R correctly found that the trial court erred in admitting the un-
*Mirandized* statement, Judge Gorenstein overlooked the fact that the Appellate Division, in determining that any
error was harmless, conflated New York's less stringent standard for nonconstitutional errors — a standard that
places the burden on the habeas petitioner to show "a significant probability . . . that the jury would have acquitted
the defendant had it not been for the error" — with the standard in *Chapman v. California*, 386 U.S. 18 (1967),
which requires a new trial unless the habeas respondent can show "such error was harmless beyond a reasonable
doubt."  Obj. at 5–7.  The Court disagrees.  Judge Gorenstein recognized that the Appellate Division applied the
appropriate standard when it cited *People v. Crimmins*, 36 N.Y.2d 230 (1975), as authority for its harmless-error
analysis, because *Crimmins* comports with *Chapman*: in the face of a constitutional error, harmlessness must be
established beyond a reasonable doubt.  *See* R&R at 19–20.  That is precisely what the Appellate Division did: it
found no reasonable possibility that the admission of the un-*Mirandized* statement might have contributed to
Petitioner's conviction based on the "overwhelming evidence of guilt" absent the constitutional error.

The Court notes that, with respect to violations of *Miranda*, the Supreme Court has recently thrown
something of a monkey wrench into what had been well-settled law.  In *Dickerson v. United States*, 530 U.S. 428,
438 (2000), the Court held that *Miranda* warnings are not merely prophylactic rules but are Constitutionally based.
Then, last year, the Supreme Court appeared to have second thoughts.  In *Vega v. Tekoh*, 142 S. Ct. 2095 (2022), the
Court held, albeit in the context of a § 1983 lawsuit, that "a violation of *Miranda* does not necessarily constitute a
violation of the Constitution, and therefore such a violation does not constitute 'the deprivation of a right . . . secured
by the Constitution.'"  *Id*. at 2106.  Although *Tekoh* was decided shortly after Petitioner filed this § 2254 Petition,
Respondent did not argue that the Petition should be denied because the *Miranda* violation did not rise to the level
of a Constitutional violation; instead, she argued that the admission of the un-*Mirandized* statement at trial fit within
one of the "multiple exceptions to the exclusionary rule."  *See* Opp. at 23, Dkt. 12.  Accordingly, the Court will
assume that a violation of *Miranda* remains a valid basis for a habeas petition.  In so doing, and as discussed further
below, the Court agrees with Judge Gorenstein's conclusion that the Appellate Division's harmless-error analysis
applied the proper standard under *Chapman* and was a reasonable application of federal law.  *See* R&R at 20, 24–25.

Petitioner's main quarrel with the Appellate Division's harmless-error analysis rests on his argument that the analysis should not have considered all of the evidence in the record.  By including in its analysis all of the evidence that reached the jury as a result of Petitioner's decision to testify, which Petitioner asserts he was impelled to do because of the erroneous admission of his un-*Mirandized* statement, Petitioner argues that the Appellate Division "compounded the prejudice" of the error in contravention of established Supreme Court precedent.  Obj. at 7–10.  Petitioner's objection further asserts that the Magistrate Judge erred when he placed the burden on Petitioner to prove that he would not have testified but for the error, rather than placing the burden on Respondent to show that the error did not induce him to testify.  *Id.*

Petitioner points to two cases in support of his position that any evidence introduced as a consequence of his testimony must be excluded when conducting the harmless-error analysis and that the Respondent bears the burden of proving that the wrongfully introduced evidence did not cause the introduction of "downstream" prejudicial evidence: *Arizona v. Fulminante*, 499 U.S. 279 (1991), and *Harrison v. United States*, 392 U.S. 219 (1968).  Neither case is helpful for Petitioner.

In *Fulminante*, the trial court impermissibly admitted the defendant's coerced confession to an inmate who was cooperating with the Government.  The trial court also admitted evidence that the defendant knew that the informant had ties to organized crime "to explain why Fulminante would have been motivated to confess" to the cooperating inmate.  499 U.S. at 300. The Supreme Court held that, on appeal, the high court of Arizona erred when it considered the defendant's knowledge of the cooperator's "mobster" ties in its harmless-error analysis because

that evidence would not have been admitted but for the improper admission of the coerced

confession to the informant.  *Id.*

Although Fulminante also challenged the impact of other prejudicial evidence that was

admitted because of the admission of the coerced confession, the Supreme Court declined to

consider what impact, if any, that other evidence might have had on the verdict; it certainly did

not hold that all "downstream" evidence should be excluded when conducting a harmless-error

analysis of a wrongfully-admitted confession.[6]

*Harrison* is also distinguishable.  In *Harrison*, three illegally obtained confessions to

murder were erroneously admitted during Harrison's first trial.  392 U.S. at 222.  Harrison was

convicted at that trial following his testimony that offered "his own version of the events" that

led to the murder with which he was charged.  *Id.* at 220.  That conviction was reversed on

appeal.  *Id.* (citing *Harrison v. United States*, 359 F.2d 214, 222 (D.C. Cir. 1965)).  On retrial,

the prosecution offered into evidence Harrison's testimony from the prior trial in which he, in

substance, admitted to the murder.  *Id.* at 221.  He was again convicted.  On appeal, the Supreme

Court reversed.  The Court inferred from the record of the first trial that but for the wrongful

introduction of his confessions, Harrison might not have testified, much less that he would have

offered a "testimonial admission so damaging" to his own case.[7]  *Id.* at 225–26.  If Harrison

testified "in order to overcome the impact of confessions illegally obtained and hence improperly

---

[6]     The sum of the Supreme Court's consideration of that other evidence came in a footnote: "Because we find
that the admission of the confession was not harmless . . . , we express no opinion as to the effect any of [the
additional prejudicial evidence linked to the confession] might have had on Fulminante's conviction." *Fulminante*,
499 U.S. at 300 n.10.  Although the Supreme Court declined to elaborate, one might draw a reasonable distinction
between the "downstream prejudice" from admitting prejudicial evidence that was only relevant because of the
improperly admitted confession and evidence that, although prejudicial, would have been independently relevant
and, for that reason, potentially admissible.

[7]     The Court drew that inference in large part because, during his opening statement, "defense counsel
announced that [Harrison] would not testify." *Harrison*, 392 U.S. at 225.

introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." *Id.* at 223.  The Court went on to state that the prosecution, "having illegally placed [the petitioner's] confessions before the jury," bears the burden to "show that its illegal action did not induce his testimony." *Id.* at 224–25.

This case is very different from *Harrison*.  Although defense counsel similarly informed the jury and the court during opening statements that, based on "the present posture of the case, . . . it looks very much like [Petitioner] will not testify," R&R at 4, Petitioner did not confront the introduction of three separate confessions, the overwhelming prejudice of which "impelled" him to offer an alternative version of events. *Harrison*, 392 U.S. at 222.  The un-*Mirandized* statement was not so damaging to Petitioner's case that he had no choice but to testify.  Rather, as discussed above, the record shows that Petitioner decided to testify against the advice of his own counsel and the court's warning of the likely evidentiary consequences. *See* R&R at 23–24; Resp. at 9 ("[B]efore he testified, the court pointed out that petitioner had received several favorable evidentiary rulings, but that he could put those rulings into issue depending on his testimony.").  The favorable evidentiary rulings that Petitioner's testimony put at risk included the exclusion of the marijuana found in the apartment, exclusion of evidence regarding Petitioner's prior drug convictions, and, of course, exclusion of the proffer statement Petitioner made to the District Attorney in which he acknowledged ownership of the guns.  R&R at 4.  In short, given the significant risks Petitioner faced by testifying and, even ignoring those risks, the limited utility of testimony that did nothing more than set up a swearing contest with

the police relative to whether he had told them the guns were in the closet, the record does not support the inference that Petitioner was "impelled" to testify.[8]

Without deciding whether Petitioner is correct as to which side bears the burden of proof under these circumstances, on *de novo* review, the Court finds that the uncontested evidence in the record demonstrates that Petitioner decided to testify in contravention of his lawyer's advice and the trial court's warnings regarding the possible evidentiary consequences of that decision. Far from impelling Petitioner to testify, the erroneous introduction of the un-*Mirandized* statement standing alone had little impact on the quantum of proof against him. Even if the statement had not been admitted, the only colorable defense was that, given the absence of any forensic evidence connecting Petitioner to the guns, there was a reasonable doubt whether he knowingly possessed them. That was never going to be an overwhelmingly convincing argument (after all, the guns were recovered from a closet in his bedroom), but it would have only been marginally less persuasive with the introduction of his statement acknowledging where the guns were located.[9] By deciding to testify, and then by deciding to lie, Petitioner turned what he argues would have been a "circumstantial case" into an overwhelming one. *See* Obj. at 2.

Thus, to the extent Petitioner is correct that the harmless-error analysis rises and falls on whether the evidentiary error "impelled" him to testify, and that Respondent has the burden of proof relative to whether Petitioner's testimony was "impelled" by the error, the record simply does not support a finding that Petitioner was impelled to testify. Accordingly, the Court finds

---

[8]    As the Court noted in *Harrison*, when evaluating the impact of the erroneous introduction of a confession on the criminal defendant's decision to testify, the Court "must assess (the) defendant's reaction to the use of his confession at trial on the basis of the information then available to him." 392 U.S. at 225 n.13 (quoting *People v. Spencer*, 66 Cal.2d 158, 165 (1967)).

[9]    Even with the un-*Mirandized* statement, Petitioner could have argued that his mere knowledge of the presence of guns in the apartment did not establish, beyond a reasonable doubt, that he possessed the guns.

that the Appellate Division correctly considered all of the admissible evidence in its harmless-

error analysis.  For all of the reasons discussed in the R&R, when considering the full trial

record, the harmless-error analysis was plainly a correct application of federal law.

Even if Petitioner were correct that the wrongfully admitted evidence impelled him to

testify and that the harmless-error analysis was, therefore, an unreasonable application of federal

law, Petitioner has not demonstrated that the error had a substantial and injurious effect on the

verdict.  *See Brown*, 142 S. Ct. at 1520 ("[A] federal court must *deny* relief to a state habeas

petitioner who fails to satisfy either this Court's equitable precedents or AEDPA.  But to *grant*

relief, a court must find that the petitioner has cleared both tests." (emphases in original)).

As Judge Gorenstein observed, "the prosecution's case without the un-*Mirandized*

statement or any of the subsequent 'downstream prejudice,' such as the proffer statement and the

evidence of drug dealing," provided significant evidence that the guns belonged to Gumbs.  R&R

at 21.  Upon *de novo* review, the Court concurs entirely with that finding.  The jury was

presented with evidence that Petitioner resided at the apartment where the guns were found —

his name was on the lease and on a utility bill, and the clothes hanging in the closet appeared to

fit someone of Petitioner's size.  The evidence further showed that the other two individuals who

were present during the search had no permanent ties to the apartment.  *See* R&R at 21–22.  The

male was on the couch when the police arrived; the couch was made up like a bed, and there was

a suitcase with men's clothing under the couch.  *Id*.  The female was in the bedroom where the

guns were found, but the lack of any "feminine products" in the bathroom was persuasive

evidence that she, too, was a visitor and not a resident of the apartment.  *Id*.  Petitioner admitted

to the police, in an indisputably admissible statement, that they "got all of [the money]" from the

apartment, further supporting the inference that the contents of the apartment belonged to Petitioner. *See id.* at 22; *see also* Resp. at 9–10.

Petitioner objects to the R&R's finding that the error did not have a "substantial and injurious effect" on the verdict, largely on the same grounds already discussed with respect to the Appellate Division's harmless-error analysis — that the admission of the un-*Mirandized* statement led to the introduction of Petitioner's proffer statement along with other damaging evidence by virtue of Petitioner's decision to testify, all of which had a "substantial and injurious effect" on the verdict. Obj. at 11–15. But, as discussed above, discounting the trial court's error and the downstream evidence, Petitioner has not persuaded the Court that it should harbor "grave doubt" that the jury would have reached a different verdict had that evidence not been admitted. *Brown*, 142 S. Ct. at 1525.

In short, even if the Appellate Division's harmless-error analysis were incorrect, Petitioner has not satisfied his burden to show that the error had a "substantial and injurious effect" on the verdict.

Petitioner requests that if the Court adopts the findings of the R&R that it issue a certificate of appealability. Obj. at 15. Under 28 U.S.C. § 2253, "[b]efore an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a [certificate of appealability] from a circuit justice or judge." *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). "The standard for issuing the certificate of appealability is whether 'jurists of reason would find it debatable whether the petition states a valid claim.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)). Specifically, a certificate of appealability may issue "only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336

(quotation omitted).  "Under the controlling standard, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *Id.* (quoting *Slack*, 529 U.S. at 484) (cleaned up).

Although it is a close call given the issues presented, the Court grants the request because reasonable jurists may find it "debatable" whether Petitioner has stated a valid claim.  *Id.*

## CONCLUSION

For the foregoing reasons, the Court ADOPTS the R&R in full.  Pursuant to 28 U.S.C. § 2253, the Court issues a certificate of appealability as to whether Petitioner has demonstrated that the Appellate Division's harmless-error analysis was an unreasonable application of federal law and that the erroneously admitted evidence at trial had a substantial and injurious effect on the verdict.  Petitioner is also granted *in forma pauperis* status for the purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962) (concluding that an appeal may be taken *in forma pauperis* if made in "good faith"); *Laboriel v. Lee*, 2021 WL 76170, at *6 (S.D.N.Y. Jan. 7, 2021) (issuing a certificate of appealability and granting *in forma pauperis* status), *aff'd*, 2022 WL 4479527 (2d Cir. Sept. 27, 2022).

The Clerk of Court is respectfully directed to close all open motions and CLOSE this case.

**SO ORDERED.**

Date:  **September 12, 2023**
       **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

14